Henry Kenneth WANGROW, Appellant,

v.

UNITED STATES of America
(two cases).

Daniel Edmund CZAJKOWSKI and Mark
Edward Murphy, Appellants,

v.

UNITED STATES of America
(two cases).

Nos. 18946, 18949.

United States Court of Appeals
Eighth Circuit.

July 22, 1968.

Certiorari Denied Nov. 12, 1968.

See 89 S.Ct. 292.

Gerald M. Singer, Minneapolis, Minn., for appellants.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Patrick J. Foley, U. S. Atty., Minneapolis, Minn., on brief.

Before MATTHES, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The appellants seek to set aside judgments of conviction entered in the United States District Court, District of Minnesota. We affirm.

The appellants were each charged by information with possession of stolen government property (18 U.S.C. § 641). In a single indictment, each appellant was charged with: *Count I*—forcibly breaking and entering a post office (18 U.S.C. § 2115); *Count II*—destruction of government property (18 U.S.C. § 1361); and *Count V*—conspiracy to break and enter a post office (18 U.S.C. § 371.) *Counts III* and *IV* charged transportation of a stolen vehicle in interstate commerce (18 U.S.C. § 2312)— *Count III* named Wangrow and Murphy and *Count IV* named Czajkowski.

Each appellant was found guilty as charged. Each received a ten-year sentence on the information charges and a concurrent ten-year sentence for de-

struction of government property. Consecutive to the sentence on the information charge, each received a five-year sentence for their respective Dyer Act violations. On each of the two remaining counts, the appellants received five-year sentences concurrent with their Dyer Act counts.

██ We will consider only the validity of the convictions for violation of §§ 641 and 2312 since sentences on the other convictions were concurrent with them. Barnes v. United States, 197 F. 2d 271 (8th Cir. 1952).

The appellants contend that the convictions we are to consider should be set aside as the trial court erred in: (1) denying the appellants' pretrial motion for relief from misjoinder and prejudicial joinder; (2) admitting evidence obtained in illegal searches; (3) admitting into evidence certain weapons; (4) refusing to grant a judgment of acquittal as a result of jury irregularities; (5) instructing the jury with respect to the rule regarding recently stolen property; (6) refusing to grant a judgment of acquittal to Murphy and Wangrow on the grounds that the evidence was not sufficient to sustain a conviction on Count III.

A brief statement of the facts leading to the informations and indictments will be helpful in understanding the objections raised by the appellants.

The Chicago police were informed in early October that Eugene Karzas, known to the police as a convicted felon and an expert safecracker, had recently burgled a post office and intended to do another in the near future. He was placed under surveillance. It disclosed that he was meeting with the appellants, also known to the police as convicted felons. The surveillance was then broadened to include them and developed that the four men were using fictitiously registered cars.

On October 6th, the police noted that Wangrow and Murphy were absent from their usual Chicago haunts. On October 7th, the officers observed Karzas and Czajkowski entering and leaving a private garage at 210 North LaPorte Street, in Chicago. They drove from the garage to Eau Claire, Wisconsin, where the police lost them. The officers continued to the Minneapolis-St. Paul area, where, after a brief search, they located two of the fictitiously registered cars at the Thunderbird Motel in Bloomington, a Twin City suburb.

The Chicago officers called local law enforcement officers and United States postal authorities for assistance. A surveillance was then established under the supervision of the local law enforcement officers.

Karzas and the appellants were seen leaving the motel at 3:00 p. m. on October 8th. They returned at 9:10 p. m. They were then observed transferring what appeared to be burglary tools and an acetylene tank from the car they had been driving to the parked car. The cars were the ones fictitiously registered and previously observed in Chicago.

The four were arrested in their motel room. Money and stamps were seized at the time of the arrest.

The police obtained a warrant to search the cars and seized burglary tools and guns in the search.

The Chicago police obtained a warrant to search the Chicago garage and evidence was seized relating to a prior automobile theft.

Karzas was murdered before trial. Wangrow was indicted for the murder before this case was tried but, subsequently, was acquitted.

**1. THE TRIAL COURT DID NOT ERR IN DENYING THE MOTION FOR RELIEF FROM MISJOINDER AND PREJUDICIAL JOINDER.**

a. *Misjoinder.*

██ Prior to trial, the appellants moved pursuant to Rule 14 of the Federal Rules of Criminal Procedure for relief from prejudicial joinder. The support-

ing affidavit alleged both misjoinder[1] and prejudicial joinder of the Dyer Act counts with the others.[2] The trial court determined that the offenses and the appellants were properly joined and that no prejudice was shown. The motion was denied subject to a motion at trial if prejudice or jury confusion developed.

We agree that joinder of the offenses was permissible. Rule 8(a) of the Federal Rules of Criminal Procedure provides that joinder of offenses is proper "if the offenses charged * * * are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Here, the Dyer Act counts were based on the same acts as the conspiracy count. The Dyer Act counts were based on the transportation of the two fictitiously registered automobiles from Chicago to Bloomington, Minnesota. Two of the "overt acts" listed in the conspiracy count were the transportation of the same two automobiles. As in United States v. Bryant, 364 F.2d 598, 603 (4th Cir. 1966), the conspiracy count formed the connecting link between the substantive counts.

■ Since Dyer Act offenses were properly joined to the conspiracy count and since all the appellants were named in the conspiracy count, the appellants were not misjoined because all of them were not named in each Dyer Act count. Rule 8(b) of the Federal Rules of Criminal Procedure provides that "all of the defendants need not be charged in each count."

b. *Prejudicial Joinder.*

■ We turn to the question of whether the joinder, although proper, was prejudicial. Rule 14 of the Federal

Rules of Criminal Procedure provides that "if it appears that a defendant * * * is prejudiced by a joinder of offenses or of defendants or by joinder for trial together the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." On appeal, the action of the trial court may be overturned only for an abuse of discretion. E.g., Haggard v. United States, 369 F.2d 968 (8th Cir. 1966), cert. denied, 386 U.S. 1022, 87 S. Ct. 1379, 18 L.Ed.2d 461 (1967); Dowling v. United States, 249 F.2d 746 (5th Cir. 1957). It is incumbent upon the moving party to demonstrate prejudice. Golliher v. United States, 362 F.2d 594 (8th Cir. 1966).

■■ Here, the appellants sought to demonstrate, by a pretrial affidavit, that prejudice would occur if the Dyer Act counts were tried together on the grounds that the "evidence concerning the two auto thefts was in many respects different:" the alleged thefts occurred at different times; the automobiles were transported across state lines on different days (October 6 and October 7); and proof as to the transportation by Czajkowski was direct and as to Wangrow and Murphy, only circumstantial. The appellants contend that further prejudice occurred during trial when the court permitted evidence seized during the search of the LaPorte garage to be received in evidence against Czajkowski. (A mutilated license plate, a key cutting machine and articles of personal property subsequently were traced to a stolen automobile.) The trial court denied the appellants' motion to reject this evidence as prejudicial, but ruled that it was only admissible to prove Czajkowski's intent since the garage was

---

1. The trial court considered the motion as having raised the issue of misjoinder even though it was titled as a motion for relief from prejudical joinder. We agree that the supporting affidavit fairly alleges both issues and consider both here. Compare, Haggard v. United States, 369 F. 2d 968, 972–973 (8th Cir. 1966).

2. It appears that at the time of the motion, the information had not been consolidated with the indictment for trial pursuant to Rule 13 of the Federal Rules of Criminal Procedure.

rented to him.[3] Appellants Murphy and Wangrow argue that since such evidence was inadmissible against them, they were prejudiced by the joinder.

We reject the appellants' claims of prejudice. We recently noted:

"* * * The prime consideration in determining whether or not to grant a severance is the possibility of prejudice to the defendant in conducting his defense. Weighing the danger of * * * undue cumulative inference is a matter for the trial judge within his sound discretion. His denial of severance is not grounds for reversal unless clear prejudice and abuse of discretion is shown. There has been no such showing here. It is not enough simply to show that such joinder makes it more difficult to defend. * * *"

Johnson v. United States, 356 F.2d 680, 682 (8th Cir.), cert. denied, 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966).

In *Johnson*, similar offenses were joined; while in this case, joinder is based on transactions constituting parts of a common scheme or plan and prejudice is less likely.

"Rule 8(a) also provides for the joinder of several charges against a defendant if they are 'based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.' In same transaction joinder the possibility of prejudice from the use of evidence inadmissible in separate trials is unlikely, since un-

der the other crimes rule, evidence relating to a single transaction is admissible in all trials concerning the transaction." (Footnote omitted.)

74 Yale L. J. 553, 561 (1964). Accord, Hanger v. United States, 398 F.2d 91, pp. 99, 100 (8th Cir. June 28, 1968).

All three appellants were associated with both automobiles. On October 5th, when the four suspects met at a Chicago restaurant, Czajkowski arrived in the automobile involved in Count III. Wangrow left the meeting in that automobile and Czajkowski left with Murphy in Murphy's automobile. Karzas arrived and left in the automobile involved in Count IV. Murphy was later seen in Chicago, riding in the automobile involved in Count III. In addition, all three were seen with both automobiles in the motel parking lot.

The appellants do not challenge the propriety of including within the overt acts of the conspiracy the transportation of the two stolen vehicles. Thus, consistent with the conspiracy count, each appellant could have been charged with both Dyer Act violations. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). If the appellants had been so charged, joinder would have been proper, e. g., Pegram v. United States, 361 F.2d 820 (8th Cir. 1966), and evidence as to one would have been admissible as against all, Hanger v. United States, supra 398 F.2d 91 at pp. 99, 100. Thus, the appellants' argument of prejudice is based, in part, on the fact that they were not

3. Appellant Czajkowski complains that the evidence was generally inadmissible as to him because of inadequate foundation. In Johnson v. United States, 356 F.2d 680 (8th Cir. 1966), this Court held that reference to prior offenses must be "clear and cogent." Accord, Boyd v. United States, 142 U.S. 450, 454, 12 S.Ct. 292, 35 L.Ed. 1077 (1892). In *Johnson*, this Court noted that that test must be applied on a case-by-case basis. The appellant argues that the foundation is inadequate because the prior theft "is alleged to have taken place sometime before." However, in Weiss v. United States, 122 F.2d 675 (5th Cir. 1941), the Court stated: "The length of time over which an inquiry as to other offenses may extend is within the sound discretion of the trial court [footnote omitted]." Id. at 682. The appellant makes no attempt to establish abuse of discretion. He also contends that his recent and exclusive possession was not established. We reject this argument. Czajkowski rented the garage from month-to-month and there was no clear evidence that Karzas or anyone else (the owner excepted) had access to the garage other than in Szajkowski's presence.

charged with both violations, a ground which we find unpersuasive. Cf., Ibid.; Yale L.J. 553, 561 (1964). Finally, we note that the court particularly instructed the jury in regard to the evidence seized at the Chicago garage at the time of its reception:

"The testimony of this witness, members of the jury, relates only to the Defendant Czajkowski, and, again, the testimony of this witness relates only to the intent of the Defendant Czajkowski within Count 4 of the indictment. The Defendant Czajkowski is not on trial for what I assume might relate to evidence involving a Cadillac. The Defendant Czajkowski in Count 4 is charged only under a Dyer Act claim as it relates to a Pontiac. This evidence again relates only to the Defendant Czajkowski, and only as to his intent."

This instruction was repeated in the closing instructions. Furthermore, the jury was properly instructed to consider the evidence entered on each offense separately as to each appellant. Hanger v. United States, supra.

▮ On appeal, for the first time, the appellants argue that they were prejudiced because they "might" have wished to testify as to one count but not another. Even had such an allegation been made before the trial court, it would have been too speculative. In Cross v. United States, 118 U.S.App.D.C. 324, 335 F.2d 987 (1964), such prejudice was demonstrated during trial when it became obvious that the defendant would not have wished to testify in regard to one count. In Dunaway v. United States, 92 U.S.App.D.C. 299, 205 F.2d 23 (1953), the defendant himself indicated his desire to testify as to only one of the counts.

▮ Also for the first time on appeal, the appellants argue that the government should have been required to elect between the information and Count I. First, as we noted in Kistner v. United States, 332 F.2d 978 (8th Cir. 1964), generally such a defense must be raised at trial. Second, multipliciousness is not *per se* grounds for election since it does not necessarily place the defendant in jeopardy of multiple offenses. United States v. Ketchum, 320 F.2d 3 (2d Cir. 1963). However, even had the appellants properly objected to multiple sentences being imposed under the information and Count I, they would not have been entitled to any relief. The applicable test was stated in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 78 L.Ed. 306, (1932):

"[T]hat, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."

See generally, Kistner v. United States, supra. This case is controlled by Macomber v. Hudspeth, 115 F.2d 114 (10th Cir. 1940), cert. denied, 313 U.S. 558, 61 S.Ct. 833, 85 L.Ed. 1519 (1941). In that case, the Court upheld consecutive sentences imposed on two counts: "The first count charged the breaking into a post office with intent to steal, take and carry therefrom moneys, stamps and property belonging to the United States; and the second count charged the theft of postage stamps." Ibid. Finally, multipliciousness need not be considered when, as in this case, one of the allegedly multiplicious counts is not necessary to sustain the conviction. United States v. Bennett, 356 F.2d 500 (7th Cir.), cert. denied, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966).

## 2. THE COURT PROPERLY RECEIVED EVIDENCE OBTAINED IN THREE SEARCHES.

a. *The warrantless search of the motel room.*

The appellants contend that the police were without probable cause to arrest the appellants and, thus, the seizure of the money and the stamps was not incidental to a lawful arrest. Judge William D. Gunn of the Fourth Judicial

District of Minnesota and the United States District Court rejected this contention. They were correct in so doing as the facts were such as to warrant a man of reasonable belief that an offense had been committed. Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Gullett v. United States, 387 F.2d 307 (8th Cir. 1967).

The District Court, in an unpublished memorandum, based its finding as to probable cause on the following facts: (1) The Chicago police were informed by an informant, whose reliability was not established, that Karzas had recently committed a post office burglary and intended to commit another. They placed him under surveillance and observed him meeting with the appellants. (2) Karzas was known by the police officers as a felon who participated in previous post office burglaries and as an expert safe-cracker. The appellants were known to the police as convicted felons. (3) The Chicago police determined that three of four cars being used by Karzas and the appellants were fictitiously registered. (4) The Chicago police observed one of the fictitiously registered cars leaving Chicago on the evening of October 7th. They followed it to Eau Claire, Wisconsin, where they lost it. Thereafter, they continued to Minneapolis, where they located the car they had lost at Eau Claire and another of the fictitiously registered cars at the Thunderbird Motel in Bloomington, Minnesota. (5) The Chicago police related the above information to local law enforcement officers, and one of them was placed on surveillance in the Thunderbird Motel, where two of the four persons were registered under assumed names. (6) The officer observed the appellants and Karzas return to the motel in one of the cars at approximately 9:10 p. m. on October 8th, and park alongside the other car which had remained under surveillance. He observed them transferring an orange acetylene tank and what appeared to be burglary tools from the trunk of the first to the second car, and entering the room of the motel.

When the Chicago officers placed Karzas under surveillance, they did so on a suspicion, see Pigg v. United States, 337 F.2d 302 (8th Cir. 1964) (see cases cited in Footnote 4), based on the past criminal record of Karzas and information from an informant of undetermined reliability, see, United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), that he intended to burgle a post office. The officers continued their surveillance and learned that the suspects: used cars registered under fictitious names; drove these cars from Chicago to Minneapolis; falsely registered at the Thunderbird Motel; left the Thunderbird Motel late in the afternoon in one of the cars and returned at approximately 9:10 p. m., dressed in "work jackets" and transferred an orange acetylene tank, and what appeared to be burglary tools, from the trunk of the car they had been driving to one that remained in the parking lot.

Each new fact tended to substantiate the "informant's tip" causing the officer's suspicions to ripen into probable cause so persuasive that, in our view, the appellants' assertion that the officers "did not have probable cause to make the arrest borders on the frivolous." Feinstein v. United States, 390 F.2d 50 (8th Cir. 1968).

The appellants next contend that the officers had, in fact, determined to arrest the appellants for possession of stolen property and for burglary, and as they did not have reasonable cause for believing that either crime had been committed before the arrest, they were without probable cause. They argue that this version of the officers' intent is established by the order in which the arresting officer stated the offenses for which he was placing the appellants under arrest—"possession of stolen government property, burglary and possession of burglary tools." The record does not sustain this contention.

Captain Mahnke, the officer in charge, testified, without objection, that he and the other officers discussed the

grounds for arrest prior to making it. They agreed that they had probable cause to arrest for possession of burglary tools, but felt that they had insufficient information to indicate clearly that the appellants had committed burglary "although we realized it was a possibility." His testimony was corroborated by that of other officers, was credited by the trial court and is supported by substantial evidence. The record is clear that when he and the other officers entered the motel room, they saw the fruits of the crime—money and stamps —laid out on a bed in the room. Under these circumstances, he was clearly justified in placing the men under arrest for the additional crimes, and the evidence seized could be used as being incidental to a lawful arrest. Dupree v. United States, 380 F.2d 233, 235 n. 1 (8th Cir. 1967), cert. denied, 392 U.S. 944, 88 S.Ct. 2289, 20 L.Ed.2d 1407 (1968); Gullett v. United States, supra, 387 F.2d at 310. The fact that he may have stated the grounds for arrest in the inverse order of his becoming aware of them is immaterial.

b. *The search of the cars.*

After the appellants were arrested, the automobiles were towed to the Bryant Police Station and impounded. The next morning, Captain Mahnke prepared an affidavit in which he outlined the facts which he felt constituted probable cause for searching the impounded car. These were substantially as outlined by Judge Larson in his memorandum and need not be fully restated here. The last two paragraphs of the affidavit stated:

"At 9:10 p. m. * * * Holmes informed me by phone of the arrival of one of the cars * * *. He told me that a dark colored car pulled into the parking area from the East and parked next to the other car that we had under surveillance. He told me that four men got out of the car and opened the trunk of [that] * * * car * * * and * * * the trunk of the other car * * *. * * *

[T]hat one of the suspects removed an orange-colored object which he thought to be an acetylene [*sic*] tank, * * * from the [first] car * * * and [put] it in the trunk of the [second] * * *. * * * [T]hat one of the men carried a leather bag, 3 or 4 feet long, which appeared to him to be some kind of a tool carrying case. * * * [T]hey put several other objects in the trunk of the car parked there which they took from the car they had been using[,] [and] * * * closed the trunk of both cars, * * *, and went into the motel.

"The four suspects were arrested at 9:25 p. m. and we found in their possession articles which were subsequently determined to have been taken in a burglary that occurred that same evening. After arresting these men, a 1966 Bonneville 4-door, Illinois license number VT 6016, and a 1965 Oldsmobile 98, 4-door, Illinois license number SJ 8611, were impounded and towed to the Bryant Police Station."

A warrant to search the cars was issued by a judge of the municipal court of Minneapolis on the basis of the affidavit. The search resulted in the seizure of the burglary tools which were received in evidence.

■ The appellants correctly contend that the sufficiency of the affidavit must be determined from its face. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). They attack the sufficiency of the affidavit on the grounds that it fails to name the four men involved or to identify the appellants as being the four men driving the cars and transferring the suspected acetylene tank and tools from one car to the other. They also contend that it fails to identify the cars to be searched as being the ones that had been under surveillance and probably containing the burglary tools. Their final contention is that there is a fatal variance in the license number of the

car to be searched, VT–6106 in the affidavit and BT–6106 in the warrant.

We do not believe any of the appellants' contentions to be well taken. A careful reading of the affidavit as a whole convinces us that the magistrate could reach no other conclusion than that the four men mentioned in the affidavit were Karzas and the appellants, and that the cars impounded by the police were those which had been under surveillance and which probably contained the burglary tools. See Steele v. United States, 267 U.S. 498, 503, 45 S. Ct. 414, 69 L.Ed. 757 (1925); Lowrey v. United States, 161 F.2d 30 (8th Cir. 1947).

While it is desirable that a search warrant state the name or the owner of the automobile to be searched, it is not necessary. Hanger v. United States, supra. See also, Minnesota Statutes, §§ 626.07 and 626.16. Nor is the search warrant rendered invalid because of the incorrect license plate. As Judge Gibson noted in Hanger v. United States, supra, 398 F.2d 91 at 99,

" 'It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place [the automobile] intended.' Steele v. United States No. 1, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925)."

c. *The search of the garage.*

The appellants attack the sufficiency of the affidavit and the search warrant on the grounds that the affidavit recites that the confidential informant, who had supplied the police with information in the past which had resulted in arrest and successful prosecution, had informed the police that he had been in the company of Eugene Karzas on October 7, 1966, in a garage at the rear of *208* North LaPorte Street, Chicago, Illinois; and, while there, had observed weapons and "burglary tools." The warrant, on the other hand, authorized a search of *210* North LaPorte Street. For the reasons indicated earlier in this

opinion and set forth more fully in Hanger v. United States, supra, we do not believe that the appellants' objections are well taken.

3. THE DISTRICT COURT DID NOT ERR IN ADMITTING INTO EVIDENCE GUNS SEIZED IN THE SEARCH OF THE AUTOMOBILES.

The appellants argue that the trial court erred in admitting into evidence guns seized in the search of the automobile used in the burglary. They argue that the prejudice created by this evidence far exceeded its probative value, particularly since there was no other evidence that such guns were actually used by the appellants in the burglary.

The trial court has great latitude in passing on the admissibility of evidence and "[its] determination of legal relevancy must be considered an act of discretion not to be disturbed absent a clear showing of abuse." E.g., Cotton v. United States, 361 F.2d 673, 676 (8th Cir. 1966). The discretion is particularly broad where the defendants are charged with conspiracy. E.g., Phelps v. United States, 160 F.2d 858 (8th Cir. 1947), cert. denied, 334 U.S. 860, 68 S.Ct. 1525, 92 L.Ed. 1780 (1948); 72 Harv.L.Rev. 920, 984 (1958).

Certainly, evidence as to means to commit the burglary is relevant to prove the conspiracy to burgle regardless of the fact that there was no direct evidence that the guns were actually used by the appellants. Cf. Morton v. United States, 87 U.S.App.D.C. 135, 183 F.2d 844 (1950).

4. THE COURT PROPERLY REFUSED TO GRANT A JUDGMENT OF ACQUITTAL OR A NEW TRIAL ON THE GROUND OF JURY IRREGULARITIES.

The appellants argue that they were deprived of a fair trial by reason of the fact that one or more jurors may have read prejudicial newspaper articles during the course of the trial.

On the afternoon of the second day of the trial, the appellants' counsel brought

to the court's attention that a juror had the St. Paul Pioneer Press open to a page containing an account of the trial. The headline of the article read, "Burglar Tools Offered in Trial." The article discussed evidence that had been offered the previous day. It stated in paragraphs three and four:

"Previous testimony has put the three [defendants] in company with Eugene Karzas, 34, identified by a Chicago detective as a 'highly proficient' safecracker who was arrested along with the trio in Bloomington several hours after the burglary.

"The body of Karzas, shot and stabbed to death, was found in an automobile in south Minneapolis Dec. 5. Wangrow has been charged with his murder and awaits trial in Hennepin district court."

The trial court immediately examined the juror in his Chambers. The juror admitted that he had been holding the paper, that he had seen the headline but stated that he had not read the article. He further stated that he had not seen any other articles concerning the trial, and that he had and would follow the court's instruction and would refrain from reading or listening to accounts of the trial. The court then invited counsel to question the juror, but both declined.

The government's counsel then brought to the court's attention that a deputy marshal had observed a second juror reading a newspaper. That juror was also examined in the Chambers. He, too, admitted having seen the same headline and having read the first sentence of the article, but could not remember its contents. Counsel were also invited to question this juror, but declined to do so.

No motion for a mistrial was made by the appellants.

The United States Supreme Court in Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), acting in the exercise of its supervisory powers ordered a new trial where seven of twelve jurors had read highly prejudicial news articles, even though the seven jurors had told the trial court on being questioned that they would not be influenced by the news articles and that they could decide the case only on the evidence of the record. The Court stated:

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. * * * Generalizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. * * * It may indeed be greater for it is then not tempered by protective procedures."

Id. at 312–313, 79 S.Ct. at 1173.

It will be noted that in Marshall: (1) a motion was made for a mistrial, (2) the newspaper articles had reached at least seven jurors, four of whom had read one or more of the newspaper articles and three of whom had scanned at least one of the articles, and (3) the articles were of a prejudicial nature in that they indicated that the defendant had been convicted of other crimes.

■■■ We have carefully reviewed the record here in the light of the standard in Marshall, and are convinced that the trial court did not err in refusing to grant a judgment of acquittal or, in the alternative, for a new trial. In so holding, we note that the appellants failed to move for a mistrial when the incident occurred. Compare, Marshall v. United States, 355 F.2d 999 (9th Cir.), cert. denied, 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed. 2d 54 (1966). The trial court carefully interrogated the jurors that had been seen with the newspaper and each of them stated that he had not read the newspaper article, compare, Mares v.

United States, 383 F.2d 805 (10th Cir. 1967); see, Smith v. United States, 385 F.2d 34 (5th Cir. 1967), and was thus not exposed to the prejudicial statement that Wangrow had been charged with the murder of Karzas.

The appellants cite Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L. Ed. 917 (1892); Holmes v. United States, 284 F.2d 716 (4th Cir. 1960); and Langer v. United States, 76 F.2d 817 (8th Cir. 1935), in support of their position.

In *Mattox*, a bailiff had told the jury that "this is the third fellow [the defendant] has killed," and eight of the jurors signed an affidavit in which they stated that, after the case had been submitted to the jury and while it was deliberating, a newspaper article, commenting on the case, was brought to the jury room and read to the jury. The Supreme Court held that it was error to exclude the affidavits of the jurors as to their conversations with the bailiff and as to the reading of the newspaper article. The Court stated:

> "Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear."

146 U.S. at 150, 13 S.Ct. at 53.

The Court also stated:

> "The jury in the case before us retired to consider of their verdict on the 7th of October, and had not agreed on the morning of the 8th, when the newspaper article was read to them. It is not open to reasonable doubt that the tendency of that article was injurious to the defendant. Statements that the defendant had been tried for his life once before; that the evidence against him was claimed to be very strong by those who had heard all the testimony; that the argument for the prosecution was such that the defendant's friends gave up all hope of any result but conviction; and that it was expected that the deliberations of the jury would not last an hour before they would return a verdict—could have no other tendency. * * *"

Id. at 150–151, 13 S.Ct. at 53.

In *Holmes*, a deputy marshal improperly communicated information to members of the jury which, alone or in combination with newspaper articles that they had read, informed them of a prior conviction. The Court stated:

> "* * * When it affirmatively appears, however, that individual jurors have read newspaper articles containing information, incompetent if offered at the trial, that the defendant had been previously guilty of criminal conduct, the Supreme Court has held that a new trial is mandatory.

> "Here there is more than jury misconduct in reading forbidden matter. There was the private communication of the court official to members of the jury, an occurrence which cannot be tolerated if the sanctity of the jury system is to be maintained. When there has been such a communication, a new trial must be granted unless it clearly appears that the subject matter of the communication was harmless and could not have affected the verdict." (Footnotes omitted.)

284 F.2d at 718.

And, in *Langer*, this Court stated:

> "One of the grounds urged on the motion for new trial was that the jury was guilty of improper conduct, in that its members read hostile newspaper articles during the progress of the trial. The practice disclosed by the record in this regard is not to be commended. It, however, appears that counsel for appellants knew that the jury were receiving, and presumably reading, the newspapers, yet failed to call the matter to the attention of the court, made no protest, complaint, nor objection, and did not at the time move for a mistrial nor for a dismissal of the jury, but took his chances on the effect the reading of these papers might have on the jury. There is

nothing to indicate that this improper conduct on the part of the jury was occasioned by anyone in behalf of the government, and the matter must largely be left to the discretion of the trial court. The lower court, in its discretion, denied appellants' motion for a new trial based on this ground, and its action in this regard is not ordinarily reviewable on appeal."

76 F.2d at 827–828.

In our view, *Mattox* and *Holmes* are clearly distinguishable as, in both, the jurors had read the prejudicial material and a timely objection was made by them. *Langer* supports an affirmance of the trial court's action rather than a reversal. Here, as in *Langer*, the appellants knew that two jurors had seen the newspaper articles but failed to move for a mistrial or a dismissal of the jury. Here, too, there is nothing to indicate that the improper conduct of the jury was occasioned by anyone on behalf of the government, nor would we add that there has been a showing that the prejudicial information was read by the two jurors.

## 5. THE COURT PROPERLY INSTRUCTED THE JURY IN REGARD TO RECENTLY STOLEN PROPERTY.

The appellants argue that the trial court erred as a matter of law in instructing the jury that unless satisfactorily explained, possession of recently stolen property is a fact from which they might infer that the possessor knew it was stolen. They contend, for the first time on appeal, that the possession was too remote in time from the date of the theft (about a month and half prior to the date on which they were first shown to be in possession).

■ The only objection to the instruction at trial was that it tended to shift the burden of proof to the appellants. The appellants thus failed to preserve the objection they now raise. Rule 30, Fed.R.Crim.P.; Harding v. United States, 337 F.2d 254 (8th Cir. 1964).

■ We would additionally note that the trial court properly instructed the jury that the longer the interval, the weaker the inference. See, Travers v. United States, 335 F.2d 698 (D.C.Cir. 1964) (two months not too long as a matter of law). See generally, Minor v. United States, 375 F.2d 170 (8th Cir.), cert. denied, 389 U.S. 882, 83 S.Ct. 131, 19 L.Ed.2d 177 (1967).

## 6. THE COURT DID NOT ERR IN REFUSING TO OVERRULE THE MOTION FOR ACQUITTAL WITH REGARD to COUNT III.

■ Wangrow and Murphy contend that the evidence was insufficient to support verdicts of guilty on Count III. Their primary contention is that it was not established that they knew the Oldsmobile they drove from Chicago to Minneapolis had been stolen. While no direct evidence was entered on this point, we have upheld the instruction on recently stolen property and need not consider the argument further. E.g., Bruce v. United States, 73 F.2d 972 (8th Cir. 1934); Niederluecke v. United States, 47 F.2d 888 (8th Cir. 1931); Beufve v. United States, 374 F.2d 123 (5th Cir.), cert. denied, 389 U.S. 881, 88 S.Ct. 122, 19 L.Ed.2d 175 (1967); United States v. Bennett, supra; Barfield v. United States, 229 F.2d 936 (5th Cir. 1956). In *Niederluecke*, this Court stated:

"* * * It is well established that the unexplained possession of stolen property shortly after the theft is sufficient to justify the conclusion by a jury of knowledge by the possessor that the property was stolen. * * *"

47 F.2d at 889.

■ In regard to Wangrow, there can be no question that the evidence on the remaining elements was sufficient. As we noted above, a conspirator is liable for all the crimes of his co-conspirators. Thus, Murphy would be liable as a matter of law even disregarding the other evidence against him.

Affirmed.