UNITED STATES of America, Plaintiff,

v.

John H. COLLINS, Defendant.

No. C3–76–1.

United States District Court, D. North Dakota, Southeastern Division.

Feb. 25, 1976.

Harold O. Bullis, U. S. Atty., Eugene K. Anthony, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

John H. Collins, pro se.

Dwight S. Cuffe, Legal Advisor, Fargo, N. D., for defendant.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

On January 6, 1976, John H. Collins, was named in a twenty-two count indictment which alleged eleven violations of 18 U.S.C. § 2312, and eleven violations of 18 U.S.C. § 2313. A warrant for arrest was issued the same day, and was served on the Defendant January 14, 1976. Upon removal to North Dakota, counsel was appointed, and Defendant was arraigned before the United States District Court for the District of North Dakota on January 20, 1976. Subsequently, for reasons set forth in hearings held on January 23, 1976, and February 13, 1976, the first court appointed counsel was allowed to withdraw and new counsel was appointed. That counsel was later relegated to a position of legal advisor when the Defendant insisted upon representing himself.

The case was scheduled for trial to commence February 24, 1976. Defendant moved on February 19, 1976, for an order suppressing "all physical evidence taken pursuant to the search warrant dated November 6, 1975, in the matter of *United States of America vs John H. Collins* . . . ." It is the position of the Defendant the evidence was obtained as a result of an invalid search warrant. The United States resists the motion, asserting validity of the search and seizure of the automobile in question. An evidentiary hearing was had on February 23, 1976.

## FACTS LEADING TO THE SEARCH

The evidence established a search for ownership identity of the vehicle was conducted without a warrant prior to obtaining a warrant to search the car for items relating to crimes believed to have been committed by the Defendant. The crucial question is whether that search, although warrantless, was legally sufficient so as not to taint any subsequent intrusions into the vehicle.

The following chain of events leading up to the search and seizure of the 1975 Buick Limited was established at the hearing.

Some time in the fall of 1975, the Federal Bureau of Investigation was alerted to the possibility of a number of stolen automobiles located on several farms in Wells County, North Dakota. Byron Nelson and Harlan Rogelstad, who both farmed in Wells County, had approached their attorney expressing concern that various automobiles they had purchased from John H. Collins may have been stolen. The information was turned over to Agent Richard Hansen in Fargo, North Dakota, who forwarded it to Agent Kenneth W. Aldridge of the Minot office of the F.B.I. Accompanied by Special Agents Richard W. Waldie and J. P. Hufford, Agent Aldridge visited the Nelson farm on November 4, 1975. Seven vehicles were examined for their public vehicle identification numbers (PVIN), and true vehicle identification numbers (TVIN). The public vehicle identification numbers are generally located either on the end of the door on the driver's side of the vehicle, or on the dashboard of the vehicle directly in front of the steering column and visible through the

windshield. Such numbers establish identity through coded numbers indicating, among other things, the manufacturer, assembly plant and year of manufacture of the vehicle. The PVIN numbers found on the seven vehicles, when checked through the National Crime Information Center (NCIC), were not numbers of stolen vehicles. The plates containing the numbers, however, in some cases were obviously changed, and in others just the numbers were changed. Every vehicle also contains a true vehicle identification number, which is placed in a location on the automobile unknown to the public. In checking the TVINs from the seven vehicles through NCIC, the agents found all seven vehicles had been reported stolen.

On November 5, 1975, an additional vehicle was located on the Gale Halverson farm west of Harvey, North Dakota. Halverson had obtained the vehicle from Rogelstad on a trade arrangement. A check of the PVIN and TVIN disclosed that it was also a stolen vehicle.

Nelson described Collins to the agents and detailed the arrangement the two had made in purchase and delivery of the automobiles. The purchases were on a cash only basis. Some of the vehicles were delivered by Collins personally and some by other persons. Nelson also advised Agent Aldridge at the November 4, 1975, meeting he had last seen Collins sometime in early October of 1975. At that time Collins was driving a white, two door, 1975 Buick Limited automobile. The last of October or the first of November Collins called Nelson by telephone from the Omaha jail and told him his car was at the Bismarck airport and asked him to have it picked up.

Nelson informed Agent Aldridge of the call, and Aldridge, in checking with the Omaha office of the F.B.I., learned Collins was taken into custody in Omaha on October 20, 1975. When arrested, he had in his possession five vehicle titles, which Aldridge was able to match to the altered public vehicle identification numbers of five of the vehicles found on the Nelson farm. In addition, Aldridge was able to determine the eight vehicles were stolen from the Chicago, Portland, Oregon, or Seattle, Washington, areas over a time period from May, 1975, to October, 1975.

After learning of the existence of the 1975 white Buick Limited, Agent Aldridge contacted Agent Willis of the Bismarck office of the F.B.I., and requested Willis to determine whether the car was actually at the Bismarck airport. Willis located the vehicle, and in the late evening of November 4, 1975, requested the Bismarck Police to impound the car, based on a violation of the city parking regulations. The vehicle was removed to the Bismarck Police impound lot.

### THE SEARCH

What followed the impoundment of the vehicle forms the basis of Defendant's motion to suppress.

After visiting the Halverson farm in the morning of November 5, 1975, Agents Aldridge, Waldie and Hufford traveled to Bismarck, arrived there between 4:00 and 4:30 P.M., and went directly to the police impoundment lot. Their stated purpose was to determine the ownership identity of the 1975 Buick Limited. A coat hanger was used to open the car, the PVIN number was checked through NCIC, and on the basis of that number, the car was not stolen. Their experience with the other eight vehicles caused them to proceed further to establish identity of the automobile. It was Agent Hufford's testimony that rental companies frequently will place their own identification markings on their cars, usually in the form of a decal placed inside the trunk. The trunk was opened by an automatic trunk release found in the glove compartment, and searched for any rental car company identification. The glove compartment was checked for a registration card. Agent Hufford searched for and found the TVIN location, which, he testified, was neither in the glove compartment nor the trunk. The TVIN, when checked through NCIC, indicated the car was not stolen. Agent Hufford, while

examining the trunk for a rental company identification, noticed a device referred to in the car repair business as a "slammer". It is frequently used by auto repair shops to pull dents out of damaged vehicles. However, the "slammer" was also known by Agent Hufford to be used by car thieves to pull locks and ignitions out of cars. At this point, the three agents, having determined identity, decided to seek a warrant before proceeding with the search. They closed the vehicle, and on November 6, 1976, approached Assistant United States Attorney David Peterson to assist in obtaining a search warrant on the vehicle.

## LEGALITY OF THE WARRANTLESS SEARCH

■ The issue is whether a warrantless seizure of an automobile and the examination of its interior for the purpose of determining identity at a police impoundment area after the car had been removed from a public parking lot violated the Fourth and Fourteenth Amendments.

The Court finds that prior to the seizure of the automobile at the Bismarck airport, the agents had probable cause to believe it was a stolen vehicle. The F.B.I., through their investigation, learned that John Collins had delivered or had caused to be delivered eight motor vehicles to several farmers in North Dakota. All were determined to be stolen. One of the farmers, Byron Nelson, had seen Collins driving a 1975 white two door Buick Limited, and later had been told by Collins that the car had been left at the Bismarck airport. Nelson informed the F.B.I. that Collins was being held in jail in Omaha. By teletype from the Omaha office of the F.B.I., Agent Aldridge learned that Collins had on his person at the time of arrest vehicle titles for five automobiles, which titles matched the altered PVIN on the automobiles found on the North Dakota farms. All this provided cause to believe that the 1975 Buick Limited was also a stolen vehicle.

Concluding that probable cause existed to believe the vehicle was stolen, the Court must determine whether the prior impoundment of the automobile rendered the subsequent examination for identity a violation of the Fourth and Fourteenth Amendments. In that regard, the Court finds the F.B.I. had probable cause to seize the automobile at the Bismarck airport. The automobile was seized from a public place, where access was not meaningfully restricted. Nelson had told the F.B.I. that persons other than Collins had made the actual deliveries in some instances. There existed the possibility that Collins, not having heard from Nelson, might ask some associate or confederate to pick up the car.

An examination of the automobile could have been made on the spot, and because of that fact, impoundment by the Bismarck police prior to that examination does not form a constitutional barrier to the use of the evidence obtained. Under the circumstances of this case, the seizure itself was not unreasonable. *See Cardwell v. Lewis*, 417 U.S. 583, 593, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1973). Exigent circumstances were present both before and after the seizure.

Having found the seizure to be proper, the Court must determine whether the examination of the automobile to establish identity upon probable cause to believe it was stolen "invades a right of privacy which the interposition of a warrant requirement is meant to protect." *Cardwell v. Lewis, supra*, at 589, 94 S.Ct. at 2468.

In terms of the circumstances justifying a warrantless search, the Supreme Court has long distinguished between an automobile and a home or office. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). One has a lesser expectation of privacy in a motor vehicle. "It travels public thoroughfares

where both its occupants and its contents are in plain view." *Cardwell v. Lewis, supra,* 417 U.S. at 590, 94 S.Ct. at 2469.

"Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in *Carroll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.

In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." *Chambers v. Maroney, supra,* 399 U.S. at 50–51, 90 S.Ct. at 1980.

Another distinguishing factor is that "the search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building." *Almeida-*

*Sanchez v. U. S.,* 413 U.S. 266, 279, 93 S.Ct. 2535, 2542, 37 L.Ed.2d 596 (1973) (Powell, J., concurring). The Supreme Court has found a "lesser expectation of privacy" in a motor vehicle because of its function and inability to escape public scrutiny. *Cardwell v. Lewis, supra,* 417 U.S. at 590–591, 94 S.Ct. 2464.

That the search was not incident to an arrest is not fatal. In *Chambers v. Maroney, supra,* 399 U.S. at 49, 90 S.Ct. at 1980, the Supreme Court held that "the search of an auto *on probable cause* proceeds on a theory wholly different from that justifying a search incident to an arrest." In *Chambers,* the search of the automobile was based on probable cause the car contained evidence of a crime. In the instant case, the F.B.I. acted on probable cause that the car itself was the evidence of a crime. Given this probable cause, the Court finds no difference under the Fourth Amendment between (1) seizing and holding a car before presenting the issue of probable cause to a magistrate or (2) carrying out an immediate but limited warrantless search. *See Chambers v. Maroney, supra,* 399 U.S. at 51–52, 90 S.Ct. 1975.

Defendant further challenges the reasonableness of the initial search in light of information as to the TVIN location possessed by the F.B.I. Reasonableness relates to the facts and circumstances of each case. *U. S. v. Rabinowitz,* 339 U.S. 56, 63, 70 S.Ct. 430, 94 L.Ed. 653 (1950). *See also, Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

■ The warrantless search was justified by probable cause and was restricted to identifying the vehicle. Once the agents reached a point which might extend beyond identification, they terminated their search.

It is well established that under certain circumstances law enforcement authorities may seize evidence in plain view without a warrant. *Harris v. U. S.,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). For the

plain view doctrine to come into effect, the law enforcement officer must have had prior justification for an intrusion in the course of which he inadvertently came across evidence incriminating the accused.

■ In the present situation, the initial intrusion was justified and limited in scope. Discovery of the "slammer" was made in the course of that limited search. Although no evidence was seized during the identity search, the Defendant argues the "slammer" and other items subsequently taken from the car should be suppressed. The Court having determined the initial search to be justified, finds the argument without merit. The discovery of the "slammer" in the trunk and the tool box in the back seat would be admissible under the plain view doctrine.

## EFFECT OF LATER WARRANT

■ When the agents came across the "slammer", they terminated their search and sought a search warrant. Application was made to a United States Magistrate, pursuant to Rule 41 of the Federal Rules of Criminal Procedure. An affidavit of Agent Aldridge accompanied the application. It is Defendant's position the affidavit is insufficient on its face to establish the grounds for issuing the warrant and showing probable cause.

The only provision in the Rules of Criminal Procedure as to the contents of the affidavit is one requiring the affidavit to establish "the grounds for issuing the warrant". See Rule 41(c).

"And, other than that the affidavit must establish the grounds for issuing the warrant, there also is no express prescription with respect to it in Rule 41, Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, which now governs the issuance of search warrants (except in the case of some inconsistent statute 'regulating search, seizure and the issuance * * * of search warrants in circumstances for which special provision is made.') Rule 41(c) provides: 'A war-

rant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant. If the judge or commissioner is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched.'

Probable cause for the issuance of a search warrant, on the grounds authorized in Rule 41(b), is then the only prescription of the affidavit under the Fourth Amendment and the Rules of Criminal Procedure. The lack of prescription for any particular or special statement in the affidavit would seem reasonably, as in the case of a pleading, to have significance on the formality required in setting out the information to show probable cause. Of course, probable cause for the issuance of a search warrant necessarily implies, not simply that there are reasonable grounds to believe that some violation of law exists, but that there is a violation in respect to some property located on some premises or on some person—each of which can be unmistakably identified, so as to be capable of being particularly described in the warrant, from the information in the affidavit. Cf. *Dumbra v. United States,* 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032.

But in order to make the property to be seized or the place or person to be searched identifiable as a basis of probable cause and warrant information, it can hardly soundly be argued that there necessarily must be a special sentence of separate or repetitive description in the affidavit. *In testing the sufficiency of the affidavit, it is entitled to be read as a whole. It would therefore seem to be enough that the affidavit contain within its four corners the information necessary to justify and to enable the search warrant to be issued, and that its statement and recitations unequivocal-*

*ly establish, whether directly or by inescapable import, the significance and relationship of the information shown." Lowrey v. U. S.,* 161 F.2d 30, 33 (8th Cir. 1947), *cert. denied* 331 U.S. 849, 67 S.Ct. 1737, 91 L.Ed. 1858 (1947). (Emphasis added).

*See also, Wangrow v. U. S.,* 399 F.2d 106, 114–115 (8th Cir. 1968), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968).

The Supreme Court has expressed the view that affidavits supporting search warrants duly issued by examining magistrates must be tested and interpreted in a common sense and realistic fashion.

"[W]here . . . circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *U. S. v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). *See generally, U. S. v. Follette,* 379 F.2d 846 (2d Cir. 1967).

As to the sufficiency of affidavits, the Eighth Circuit has more recently held:

"(1) only a *probability* of criminal conduct need be shown, (2) standards less rigorous than rules of evidence determine sufficiency (3) common sense controls and (4) 'great deference' should be shown by the courts to a magistrate's determination of probable cause." *McCreary v. Sigler,* 406 F.2d 1264, 1268 (8th Cir. 1969); *See also, U. S. v. Koonce,* 485 F.2d 374, 380 (8th Cir. 1973).

The Court finds the affidavit, read in its entirety, sufficient on its face to establish probable cause that articles named in the affidavit would be found in the automobile described. The affidavit is supported by facts gained independently of the prior search for identity. Defendant does not challenge the warrant on grounds that it was not properly served or that the search pursuant to the warrant was improper.

The Defendant specifically challenges the accuracy of paragraph four of the affidavit. From the evidence adduced at the hearing, it is clear that when Nelson advised Agent Aldridge on November 4, 1975, that Collins' 1975 white, two door, Buick Limited, was at the Bismarck airport, Nelson had prior knowledge of the location of the vehicle, which knowledge had been communicated to him by Collins. That the information was reliable is evidenced by the fact that acting on it, the agents found the vehicle at the airport.

It is ordered the Defendant's motion to suppress is denied.