**R. H. FULTON** and **United States Fidelity and Guaranty Company,** Appellants,

v.

**COPPCO, INC.,** Appellee.

No. 10152.

United States Court of Appeals Tenth Circuit.

March 11, 1969.

Gordon G. Greiner, Denver, Colo. (Lawrence W. Treece, of Holland & Hart, Denver, Colo., with him on the brief), for appellants.

Thomas E. McCarthy, of McCarthy & Reneau, Denver, Colo., for appellee.

Before LEWIS, HILL, and SETH, Circuit Judges.

SETH, Circuit Judge.

The appellee, Coppco, Inc., commenced this action against R. H. Fulton and the United States Fidelity and Guaranty Company, seeking to recover the balance it claimed was due it as the supplier of concrete water pipe for a steel and concrete waterline constructed by Fulton as the prime contractor. Coppco's contract was to furnish the pipe to Kaiser Steel Corporation which in turn held a contract from Fulton to furnish to him both steel and concrete pipe. The trial court entered judgment for Coppco against both defendants. The defendants have taken this appeal urging two principal grounds for reversal, the first ground being the failure of the trial court to grant a trial continuance, and the second ground the conclusion of the trial court as to the applicability of two Colorado statutory provisions relating to the nature of the bond required for municipal construction contracts.

In 1965 the appellant Fulton contracted with the City of Colorado Springs to construct a steel and concrete pipeline, and a construction bond was given to the City with Fulton as principal and the United States Fidelity and Guaranty Company as surety. Fulton in turn executed a contract with the Kaiser Steel Corporation whereby Kaiser agreed to supply Fulton with both steel and concrete pipe for the project. Kaiser intended to manufacture the steel pipe itself, but executed a contract with Coppco whereby it agreed to furnish Kaiser the concrete pipe.

Fulton experienced various difficulties in laying and welding the steel pipe, and after the installation of the concrete pipe, it was discovered that some of it had deflected. The City required Fulton to have made the necessary repairs and replacements.

Fulton withheld $475,000.00 of the contract price payable to Kaiser on the ground that the steel and concrete pipe supplied did not conform to specifications. Kaiser in turn refused to pay Coppco the amount remaining to be paid under the Coppco-Kaiser contract for the concrete pipe. The controversy could not be settled, and a series of lawsuits was commenced. Kaiser first sued Fulton, United States Fidelity and Guaranty Company, and the City of Colorado Springs in the District Court of Colorado in 1966. The following day Fulton sued Kaiser in the Texas District Court, alleging a breach of warranty and contract by Kaiser in regard to both the concrete and the steel pipe. In January 1967, Coppco filed this suit in the District of Colorado against Fulton, Kaiser, and United States Fidelity and Guaranty Company, seeking judgment of approximately $142,000.00 which was the balance due it for the concrete pipe and compensation for the additional labor and materials supplied for the repair of some of the concrete pipe sections of the line.

Appellant Fulton's first contention on this appeal is that his motion for continuance should have been granted by the trial court because he was unable to complete the necessary discovery in order to prepare his defense that the concrete pipe supplied by Coppco was defective.

All concerned acknowledge that motions for continuance are addressed to the sound discretion of the trial court. Ziegler v. Akin, 261 F.2d 88 (10th Cir. 1958); King v. United Benefit Fire Ins. Co., 377 F.2d 728 (10th Cir.1967). Thus the issue on this appeal is whether the trial court abused its discretion in refusing to grant Fulton's motion for a continuance. In reviewing the record, the following are some of the significant events: Fulton sued Kaiser in Texas in September 1966, and the issues raised in that case were identical to the issues in the present suit. On May 23, 1967, at the first pretrial conference in this case, it was made clear that the condition of the concrete pipe supplied by appellee was at issue as was the condition of the steel pipe. At the second pretrial conference on September 29, 1967, it continued

to be clear to the parties that the condition of the concrete pipe was still at issue. However, Fulton asserts that he planned to obtain depositions regarding the condition of the steel pipe first, and then, subsequent to this, was going to obtain depositions concerning the concrete pipe inasmuch as the two issues were related.

On January 5, 1968, the trial court held a hearing on Fulton's motion for a continuance, the case having been set for trial. The deadline set in the second pretrial order (pretrial of September 29, 1967) for completion of depositions was December 30, 1967. The attorney for Fulton was asked at this pretrial by the court whether the December 30, 1967, date would allow sufficient time for discovery on all issues—"everything," and they replied they would try to complete discovery on both issues within that time. The case would then have been filed for nearly a year. It was apparent that the case had been proceeding with both the concrete and steel pipe issues. At the hearing on the motion for trial continuance the attorneys for appellee stated that they understood that the second pretrial order had severed the concrete pipe issue from the steel pipe issue. The trial court upon examination of the issues listed in the order agreed, and thus held that the concrete pipe issue was to be tried first. Fulton urges that he was not aware of the severance, and that it somehow prejudiced him but, other than some subjective planning, this could have done little more than remove one issue, and an issue relating to Kaiser and not to Coppco. If Fulton had been proceeding diligently this could have made little difference.

Fulton had in September 1967 taken some depositions concerning the steel pipe issue, but had experienced a long delay in receiving the transcripts. Fulton in his brief states that "their inability to complete discovery was due solely to the procrastination of a shorthand reporter in transcribing the depositions of September 14." It is difficult to see how this "procrastination" as to the issue relating to the Kaiser-made steel pipe should have been permitted to delay the discovery and the delay of trial on the Coppco-made concrete pipe. Fulton apparently wanted to complete the steel pipe discovery first, but it was obvious that both issues were present and time was running out.

At the hearing on the motion for continuance Fulton's attorneys announced that they had not given the names of his witnesses to opposing counsel as required by the pretrial order; the court gave an additional five days to comply with the order and extended the time for discovery and the taking of depositions for an additional twenty days. It appears that the appellant Fulton had obtained no depositions relating to the concrete pipe between the time of the first pretrial conference in May and the time of this appearance on January 5, nor had made any attempt to do so.

Appellants contend that Sutherland Paper Co. v. Grant Paper Box Co., 183 F.2d 926 (3d Cir.), should be applied. The court there found an abuse of discretion and said: "Zeal to dispose of pending litigation, commendable in itself, has resulted in deprivation of reasonable opportunity to make adequate preparation for trial." However, the Sutherland case involved patent infringements which required "elaborate presentation," and since motions for summary judgments were pending, any use of elaborate discovery procedures before the summary judgment question was disposed of may have proved not only costly but unnecessary. Therefore, the appellants in that case had a valid reason for having not proceeded with their discovery, but no such reason appears here. This case does not fall within the prohibited "abuse" standards described in McBee v. Bomar, 296 F.2d 235 (6th Cir.); Commercial Credit Corp. v. Pepper, 187 F.2d 71 (5th Cir.), or in Chung Wing Ping v. Kennedy, 111 U.S.App.D.C. 106, 294 F.2d 735.

 The second major point raised by appellant in urging reversal is that

the trial court erred as a matter of law in holding that Fulton was liable directly to the appellee supplier under the statutory bond it had executed as principal. The two relevant sections of the Colorado statute which apply to municipal construction bonds are sections 86–7–4 and 86–7–6, C.R.S.1963.[1]

Appellants argue that the section 86–7–6 is the only one which here is concerned as the bond in issue was given pursuant to it alone. Appellants urge also that no "payment" bond under section 86–7–4 was given, and although the City was obligated to require the appellant to execute the bond its failure to do so in no way affected the liabilities of the appellants.

It should be noted that the trial court in considering this issue found that Fulton, although not expressly obligated to pay suppliers of materials under the bond in question, nevertheless should be required to do so under section 86–7–4 which provided for a "payment" obligation. The court held that, as a matter of law, both sections of the statute determined the obligation under the bond, and in our opinion the trial court correctly applied the Colorado law.

The Colorado Supreme Court in General Electric Co. v. Webco Construction Co., 433 P.2d 760 (Colo.1967), discussed the history of the two sections and their requirements. The court there in substance held that section 86–7–6 added to the requirements of section 86–7–4 and stated: "They [the legislators] added the provision requiring the principal contractor to furnish a *performance bond* where previously a bond for the *prompt payment* of suppliers and materialmen was deemed sufficient." Although this cited case involved the application of the period of limitations in these sections, the case is persuasive and refutes the appellant's contention that the bond in issue was a bare performance bond. The trial court was thus correct in construing the bond under both sections, and in permitting a direct action by a supplier against the principal and the surety. Within our decision in Pan American Petroleum Corp. v. Candelaria, 403 F.2d 351 (10th Cir.), and the cases therein cited, we accept the trial court's view of the applicable Colorado law in the absence of direct state authority.

1. "86–7–4. * * * Hereafter any person * * * entering into a contract with any * * * city * * * for the construction of any public building or the prosecution or completion of any public work * * * shall be required * * * to execute, in addition to all bonds that may now or hereafter be required of them, a penal bond with good and sufficient surety * * * conditioned that such contractor shall at all times promptly make payments of all amounts lawfully due to all persons supplying or furnishing him or his subcontractors with labor or materials used or performed in the prosecution of the work provided for in such contract * * *. Subcontractors, material men, mechanics and others, may have a right of action for amounts lawfully due them from the contractor or subcontractor, directly against the principal and surety of such bond. Such action for material furnished or labor rendered shall be brought within six months after the completion of the work and not afterwards."

"86–7–6. * * * Every contractor to whom is awarded any contract for more than one thousand dollars for the construction, erection, repair, maintenance, or improvement of any building, road, bridge, viaduct, tunnel, excavation or other public work * * * for any * * * city * * * shall duly execute * * * a good and sufficient bond * * * in a penal sum not less than one-half of the total amount payable by the terms of the contract. Such bond shall be duly executed by qualified corporate surety, conditioned for the due and faithful performance of the contract, and in addition, shall provide that if the contractor or his subcontractors fail to duly pay for any labor, materials, * * * or other supplies used or consumed by such contractor or his subcontractor in performance of the work contracted to be done, the surety will pay the same in an amount not exceeding the sum specified in the bond, * * *."

It does not appear necessary to consider the issue whether the construction contract provisions between Fulton and the City were incorporated into the obligations of appellants under the bond. The appellant Fulton also urges that it had a different obligation under the bond as principal as it related to the payment of suppliers than did the surety. This somewhat novel contention need not be examined in view of our holding on the applicable Colorado law.

Affirmed.