Dale Francis DeROSIER, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19368.

United States Court of Appeals
Eighth Circuit.

March 11, 1969.

Russell A. Sorenson, of Thiel, Root & Sorenson, Minneapolis, Minn., for appellant.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee, Patrick J. Foley, U. S. Atty., Minneapolis, Minn., on the brief.

Before GIBSON, LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Defendant appeals from a conviction of armed robbery under 18 U.S.C.A. § 2113(a) (d). He received a ten-year sentence. Two accomplices, who pled guilty to lesser charges, testified as to defendant's participation in the offense. Defendant alleges upon appeal that the trial court erred: (1) in failing to exclude from the courtroom during trial a government witness along with other witnesses; (2) in admitting testimony of a physician who testified that defendant was "similar" to a patient whom he had treated under another name; (3) in denying him due process by permitting

the two accomplices to testify against him after they had pled guilty to lesser charges; (4) in "chilling" his right to trial by jury by imposing a heavier sentence upon him than upon the accomplices who pled guilty; (5) in denying him due process by overruling his motion for mistrial when during the course of the trial it was discovered that one of the jurors was a "family acquaintance" of a prosecution witness. We affirm.

The government's evidence was that on November 27, 1967, the defendant and three other men, Raymond Benitez, Richard Cosgrove and Donald Hormel committed armed robbery of the Northwestern State Bank in Jordan, Minnesota. During the course of the robbery Hormel's gun went off, seriously wounding his foot. He was apprehended shortly thereafter in Minneapolis at the St. Mary's Hospital. Later, after an automobile chase and gun battle with a police officer, Cosgrove and Benitez were arrested.

On December 8, 1967, Minneapolis police chased a 1959 blue Chevrolet which during pursuit struck a tree. The driver fled. A Smith and Wesson snubnose revolver was found in the motor compartment of the car. The testimony reflected that Hormel had purchased this gun and given it to the defendant prior to the robbery. Connie Erickson, the sister of defendant's girlfriend, observed the defendant at her home early in December 1967 with his leg bleeding and lip cut. The defendant told her he had been in an auto accident. Thereafter, on December 11, 1967, Dr. Suddard at the Phalen Clinic in Minneapolis examined a man using the name of Michael D. Johnson. This man had a fractured kneecap, chipped tooth and assorted bruises. He initially refused hospitalization but subsequently entered St. Mary's Hospital in Minneapolis. The records of the hospital show that one Michael D. Johnson was admitted at 11:10 p. m. on December 11, 1967, and gave his address to be the same as Sharon Hackbarth, defendant's girlfriend. The records at Phalen Clinic showed that the same Michael D. John-

son was employed by Robert Gervais at a filling station in Minneapolis. Gervais was a friend of the defendant.

Defendant moved for sequestration of the witnesses. This motion was granted and the witnesses were all excluded with the exception of the F.B.I. agent in charge of the investigation. His only testimony in the trial was for impeachment purposes concerning a statement taken from one of the defendant's witnesses.

■ We have long held sequestration of witnesses is within the sound discretion of the trial judge. Moses v. United States, 297 F.2d 621, 623 (8 Cir. 1961); Bunn v. United States, 260 F.2d 313 (8 Cir. 1958); Hood v. United States, 23 F.2d 472 (8 Cir. 1927). Defendant has totally failed to demonstrate any prejudice here to justify a finding of abuse of discretion on the part of the trial court.

■■ Defendant also urges that the trial court erred in admitting the testimony of Dr. Suddard who stated that DeRosier was "similar" to a certain patient whom he had treated. The gist of this argument appears to be that because no other witnesses, except the accomplices, were able to identify DeRosier, he was prejudiced by the doctor's "speculative" testimony. As we recently stated in Wangrow v. United States, 399 F.2d 106, 115 (8 Cir. 1968):

> "The trial court has great latitude in passing on the admissibility of evidence and '[its] determination of legal relevancy must be considered an act of discretion not to be disturbed absent a clear showing of abuse.' "

See also Cotton v. United States, 361 F.2d 673 (8 Cir. 1966). We find no abuse of discretion here. Defendant's objection relates to the credibility of and weight to be given the doctor's testimony, not to its admissibility.

■■ Defendant also urges that the trial court denied him due process as guaranteed in the Fifth Amendment by permitting two accomplices to testify

against him after they had pled guilty to lesser charges. He contends that a "deal" was made which so impaired the ability of the accomplices to testify truthfully as to make them incompetent to testify. Both witnesses stated under oath, however, that they had neither been coerced into testifying nor promised lenience by the government. Neither accomplice had yet been sentenced at the time he testified. The mere fact that a witness hopes to receive a reduced sentence by testifying for the prosecution does not disqualify him. Brown v. United States, 126 U.S.App.D.C. 134, 375 F.2d 310, 315 (1966); United States v. Vida, 370 F.2d 759, 767–768 (6 Cir. 1966); Diaz-Rosendo v. United States, 357 F.2d 124, 130 (9 Cir. 1966). Compare Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

█ Defendant also alleges that the trial court has "chilled" his right to a trial by jury by imposing upon him a greater sentence than was imposed upon his accomplices who pled guilty.[1] He has, however, failed to demonstrate that his relatively longer sentence was in any way related to his insistence upon a trial by jury. Since many other factors, such as prior criminal records, his background, etc., properly enter into a determination of the sentence to be imposed, we cannot find any purposeful "chilling" absent such a showing.

The defendant also alleges denial of due process in the impairment of his right to the free exercise of peremptory challenges of the jury. During the course of the voir dire the trial court examined the jurors. The judge read the indictment to the jury which stated in part that Raymond Benitez, Dale Francis DeRosier and Donald Douglas Hormel committed the various felonious acts alleged. Thereafter the court introduced Mr. DeRosier and his attorneys, as well as the government's attorney, and then inquired: "Now, let me ask you whether or not any of you folks know any of the persons *who I have just introduced to you?*" (Emphasis ours.)

Only one hand was raised. Upon subsequent inquiry, this appears to have been a juror who was excused because he knew the defendant. This was later revealed when the court asked "Now, does anyone know the defendant or *any of the other parties whose names I have mentioned?*" (Emphasis ours.)

Juror Harris at no time raised his hand in affirmative response to any of these questions. The voir dire took place on March 18, 1968. Two days later, during the course of trial, Hormel, who had pled guilty, advised the government that he would testify. His counsel informed the government at that time that Juror Harris was an "acquaintance" of Mr. Hormel's family. Thereafter, the defendant moved for a mistrial. This was denied, but the court indicated it would entertain any suggestion that defense counsel might have. No suggestion was made. The trial continued and Hormel proceeded to testify concerning the defendant's participation in the crime.

The government urges that mere acquaintanceship with a party or witness involved in the litigation does not make a person incompetent to be a juror. See, e. g., United States v. Sferas, 210 F.2d 69 (7 Cir. 1954). However, this fails to meet defendant's argument that the free exercise of his right to peremptory challenge has been materially impaired. Defendant urges that if Juror Harris had revealed this acquaintanceship he probably would have exercised one of his peremptory strikes. His contention is not outside what we think would be the realistic contemplation of able defense counsel under such circumstances.

The right to peremptory challenge is the litigant's shield from the probability of concealed or inadvertent prejudice of a juror. Every juror is a product of his own experiences, and his mental attitude

---

1. Defendant DeRosier received a ten-year sentence. His accomplices received sentences of eight years and six years. None received the maximum sentence permitted under the statute. See 18 U.S.C.A. § 2113(a) (d).

may well be related to his own historical environment as well as his contact with acquaintances within that environment. This background is seldom ground for disqualification for cause, but it can serve as a signal of possible bias for the lawyer to weed out by his sole means, the peremptory strike. And "it must be exercised with full freedom, or it fails of its full purpose." Lewis v. United States, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892).

In the instant case defense counsel does not contend that Juror Harris deliberately concealed his acquaintance with the Hormel family. We agree that the sequence of the questions and the incident of remote mention of Hormel's name would not necessarily alert any juror who had an acquaintance with Hormel to respond affirmatively to the question: "Now, does anyone know the defendant or any other *parties* whose names I have mentioned?" (Emphasis ours.) Immediately preceding this question were the introduction of counsel, a discussion about prior newspaper publicity, and questions concerning possible knowledge of the bank at Jordan. It seems reasonable to say that at this juncture only an astute mind-reading act would relate Hormel to the court's inquiry. Counsel has every right to propound questions to the jury on voir dire which the court has overlooked, in order to aid him in exercising his peremptory challenge. He did not choose to do so. The fact that Hormel was or was not known to be a prospective witness is secondary to a relevant inquiry. He was known to be involved in the crime. Perhaps both court and counsel felt sufficient inquiry had been made; however, it is far from clear. Cf. Orenberg v. Thecker, 79 U.S.App.D.C. 149, 143 F. 2d 375 (1944); Brown v. United States, 356 F.2d 230 (10 Cir. 1966). We are not dealing with a juror's deliberate or even inadvertent concealment of relevant information. If the facts revealed otherwise, our analysis would be more difficult. Cf. Photostat Corp. v. Ball, 338 F. 2d 783 (10 Cir. 1964); Consolidated Gas

& Equip. Co. v. Carver, 257 F.2d 111 (10 Cir. 1958). Under the circumstances, we find there was not sufficient questioning at the voir dire to make claim now that defendant's right of peremptory challenge was in anyway impaired by the juror's alleged nondisclosure. A party may not claim error of a juror's nondisclosure unless the juror clearly understands what it is that he is asked to disclose. See Brown v. United States, 356 F.2d 230 (10 Cir. 1966); Kissell v. Westinghouse Elec. Corp., 367 F.2d 375 (1 Cir. 1966); Truitt v. Traveler's Ins. Co., 175 F.Supp. 67 (S.D.Tex.1959), aff'd, 280 F.2d 784 (5 Cir. 1960); Lay v. J. M. McDonald Co., 24 F.R.D. 36 (D.Colo. 1959), appeal dismissed, 274 F.2d 827 (10 Cir. 1959).

Defendant alleges, however, that the trial court erred in refusing to declare a mistrial when it was revealed that the juror was acquainted with the witness' family. Defendant alleges that it was incumbent upon the trial judge to make further inquiry under these circumstances. The difficulty with this approach is that defendant seeks to raise a speculative inference of bias to the level of fact. Under the circumstances, prejudice will not be presumed. The trial court gave every opportunity to counsel to suggest a different course of action; one alternative might have been to make private inquiry of the juror. Counsel did not request it. Without making further effort to show probable prejudice, either at the time of trial or upon post trial motion, we are left to the realm of speculation. To hold that after verdict a party may obtain a new trial upon a mere showing of some acquaintance between a witness and a juror would lead to horrendous results. This is a step we choose not to take.

This court faced an analogous situation in Andrews v. Olin Mathieson Chem. Corp., 334 F.2d 422 (8 Cir. 1964), where it was claimed a juror did not fully disclose his occupation as being connected with the insurance business. Judge Ridge stated: "Any irregularity in the qualification of a juror after return of

a verdict, absent specific showing of injury or prejudice, will not be considered for the first time on appeal." 334 F.2d at 429. See also Brown v. United States, 356 F.2d 230 (10 Cir. 1966); Kissell v. Westinghouse Elec. Corp., supra; United States v. Haynes, 398 F.2d 980, 984 (2 Cir. 1968).

Judgment affirmed.