**Rudolph WILLIAMS, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 240–68.

United States Court of Appeals
Tenth Circuit.

Oct. 8, 1969.

Rehearing Denied Jan. 16, 1970.

Elmer Lee Hamby, Denver, Colo., for appellant.

Bernard V. Borst, Asst. U. S. Atty., Wichita, Kan. (Benjamin E. Franklin, U. S. Atty., and John R. Martin, Asst. U. S. Atty., Topeka, Kan., on the brief), for appellee.

Before FAHY, Senior Circuit Judge,[*] HILL and HOLLOWAY, Circuit Judges.

HILL, Circuit Judge.

On October 5, 1967, the Falun State Bank, Falun, Kansas, was robbed. William Haycock, Rudolph Williams, and Deloris Ware were charged by indictment with violation of 18 U.S.C. § 2113(a), (d), 18 U.S.C. § 2. Prior to trial, William Haycock pleaded guilty to the charge. Deloris Ware was called for trial as co-defendant with defendant Rudolph Williams. After a jury was empaneled but before the trial began, Deloris Ware changed her plea to guilty. The remaining defendant, Rudolph Williams, was subsequently convicted by a jury of armed robbery of the Falun State Bank in violation of 18 U.S.C. § 2113(a), (d) and 18 U.S.C. § 2.

Appellant Williams appeals his conviction and assigns the following as error by the trial court: 1) depriving the defendant of a fair trial by reason of the unavailability of Deloris Ware as a witness, and by reason of the prosecutor's remarks regarding her use as a witness for defendant; 2) improperly instructing the jury in response to their question concerning the absence of Deloris Ware as a witness; and 3) failing to grant a new trial on a motion which set out juror Dillon's failure to disclose on voir dire that the business he was asso-

---

[*] Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

ciated with had recently been the victim of an armed robbery.

After co-defendant Deloris Ware pleaded guilty and after the trial of Williams began, defendant's counsel requested the court to subpoena Ware under rule 17(b) as a witness for the defense.[1] At the time defense counsel requested the subpoena, he indicated to the court that he thought Deloris Ware was frightened and did not want to testify because she was afraid of the effect it might have on her chances for probation. The prosecutor remarked, during the colloquy between the trial judge and both counsel, "Might also be sure she understands, and I want the Court to understand, that if this woman does take the stand and testify and testifies about anything contrary to what she has told the probation office in connection with their interview on the presentence report, that we intend to call the probation officer to impeach her testimony. And she better understand that too. She has made a statement to the probation office."

The prosecutor also said, "And, this could very well affect her [Ware] probation if she tries to say something different [from the statement to the probation officer]." Subsequent to this colloquy, the court issued the subpoena and the order was returned served. However, Deloris never took the witness stand to testify at the trial. From a careful reading of the record, we cannot conclude that the prosecutor conveyed to Ware the contents of his above set out in-court statement or that he was in any manner responsible for the failure of Ware to testify at the trial.

Although Deloris Ware did not testify at the trial, she was not unavailable in any sense that amounts to error on the trial court's part. The court did issue compulsory process and it was served. Ware informed defendant's counsel that she did not wish to testify, yet nothing more was done by the defendant to draw upon the powers of the court to enforce the subpoena. The court was not informed of any difficulties regarding the use of Ware as a witness other than defense counsel's remarks—during a colloquy with the trial judge and the prosecutor concerning the court's response to the jury's question on the absence of Deloris Ware as a witness—that he did call Ware and subpoena her, but he was advised that she was physically or mentally deranged at that time. Between defendant's request for the subpoena and the retirement of the jury, the court was not informed that Ware had refused to testify or was otherwise unavailable. No request was made for enforcement of the subpoena or for a continuance for time to secure her presence. If requested by counsel, a continuance could have been granted by the court in its discretion to allow time for the appearance of the witness.[2] In addition, the court's contempt power was available to discipline Ware's failure to obey the court order.[3]

Appellant argues that the prosecutor's remarks when the subpoena was requested were improper and coercive, and they resulted in Ware's unavailability to testify on behalf of the defendant. The remarks were made outside the jury's hearing and without Deloris Ware present. The most that can be read into the remarks made by the prosecutor are, 1) if she lies she will be subject to perjury charges; 2) if she contradicts her previous statement to the probation officer the probation officer will be called to impeach her; and, 3) if she testified to new or different facts concerning the robbery she pleaded guilty to, the content of that statement will be considered along with her statement to the probation officer in determining her sentence and probation.

1. Fed.Rules Cr.Proc. rule 17(b), 18 U.S.C.

2. Fulton v. Coppco, Inc., 407 F.2d 611 (10th Cir. 1969).

3. Fed.Rules Cr.Proc. rule 17(g), 18 U.S.C.

■ In no sense can the prosecutor's reminder of perjury or impeachment as a possible consequence of testifying be viewed as improperly coercing the witness not to testify. The prosecutor's additional statement that conflicting testimony "could very well affect her probation," surely would give the witness pause to consider whether her testimony would damage her chances of probation. But not all cause and effect is coercion. The prosecutor was correct in his assertion that Deloris Ware's court statements concerning the crime to which she plead guilty would be considered in determining her sentence on probation. All of her statements about the crime, particularly those made as a witness under oath, are relevant and proper considerations in determining whether she should be put on probation. When the prosecutor pointed this out, he did not improperly coerce Ware into not testifying.

If the prosecutor's conduct is viewed as defendant suggests, the prosecutor is guilty of the crime of obstructing justice. 18 U.S.C. § 1503. But the prosecutor's remarks do not disclose an effort to influence, intimidate, or threaten the witness into not testifying. Rather, his remarks only extend to the point of making it clear what Ware, like any witness, can expect if she gives false or contradictory testimony. Neither precedent nor logic supports a reversal on the grounds of the prosecutor's remarks.

If defense counsel thought the circumstances made it impossible to call Ware as a witness for the defense, and if he did not wish his client to be bound by her testimony, he should have laid a foundation for calling her as the court's witness. If the witness could be shown to be hostile to the defense because of the prosecutor's remarks, defense counsel could have cross-examined her as the court's witness.[4]

Appellant's second assignment of error concerns the trial judge's response to a question sent by the jury during its deliberations. The jury asked, "Could Deloris Ware have testified on the witness stand to *verify* or *deny* the statement of Williams that he had been with her and received some pills from her on the morning of Oct. 5?" The trial judge consulted both counsel on what the court's response should be. The trial judge subsequently answered the jury's question as follows: "Deloris Ware would have been a competent witness and could have testified in the present case had either side, that is, the government or the defendant called her as a witness in the case."

■ Before the answer was sent to the jury, both counsel acknowledged that it was acceptable. If defense counsel had some specific objections to the trial judge's answer, he should have informed the court when the court was considering the problem.[5] When no objection is made to an instruction, the question is not open to review unless the error is palpably wrong.[6]

The record discloses that the court had difficulty framing a response to the jury's question because of the question's ambiguity. Since Deloris Ware was a co-defendant in the trial until just after the jury empaneling when she changed her plea to guilty, the jury's question could have been aimed at whether Deloris Ware's former part in the trial prevented her from being a witness at the trial of Williams alone. Or the jury may have been asking whether they are allowed to infer anything from the fact that Deloris Ware did not testify either to support or refute defendant Williams' testimony. Possibly both questions were intended.

4. United States ex rel. Miller v. Pate, 342 F.2d 646 (7th Cir. 1965), rev'd on other grounds, 386 U.S. 1, 87 S.Ct. 785, 17 L. Ed.2d 690.

5. Harris v. United States, 243 F.2d 74 (5th Cir. 1957).

6. Cotton v. United States, 409 F.2d 1049 (10th Cir. 1969); Fed.Rules Cr.Proc. rule 30, 18 U.S.C.

The record indicates that the court, with help from both counsel, attempted to determine precisely what the jury was asking. The trial judge, with the acquiescence of both counsel, decided that his response would avoid a tangle of unwarranted inferences if he simply stated that there was no legal impediment preventing Deloris Ware from testifying, and that either prosecution or defense could have called her as a witness. The instruction was accurate, and the conviction does not rest on an equivocal instruction on a basic issue.[7]

Appellant argues on appeal that Ware was not available, and the court should have consequently responded "No" to the jury's question. But, as already stated, the record does not disclose that Ware was unavailable as a witness. The only indication of her unavailability was defense counsel's statement that when he called her, he was advised that she was physically or mentally deranged at the time. The record contains no verification of Ware's incompetency or unavailability.

 Williams urges that the trial judge's instruction was improper because the jury's inquiry was whether the absence of Ware as a witness should reflect adversely upon the defendant. This interpretation is not free from doubt and any response designed to answer it would have multiplied the ambiguities. Responding to all the questions the jury might have intended by their inquiry could have easily misled the jury into inferring an opinion on the significance of Ware's absence from the trial judge's answer. Instruction should be carefully guarded so that the jurors are left free to exercise their independent judgment upon the facts.[8] The trial judge's instruction was not deceptive, misleading, or inaccurate; thus, it did not exceed the trial judge's discretion.

Finally, appellant assigns as error juror Dillon's failure to disclose on voir dire that the business he was associated with had recently been the victim of an armed robbery. Defendant asserts that this deprived him of a trial by a fair and impartial jury, and it impaired his opportunity to effectively exercise his preemptory challenges.

During voir dire, one of the original twelve persons called into the jury box was asked whether she or any member of her family or any relative had been the victim of a crime. A similar question was subsequently asked of two other jurors: one concerning his relatives, and the other concerning the business where he was employed. When John S. Dillon, Jr., was called as a prospective juror, he was asked by the court whether he would have had occasion to answer affirmatively to any of the questions already put to other jurors. Dillon answered "No"; he could not answer affirmatively to any questions already put to other prospective jurors.

When defense counsel questioned Dillon on voir dire, he elicited the fact that Mr. Dillon was associated with a large chain of supermarkets having stores in several cities and lived in Hutchinson, Kansas. After the trial, defense counsel discovered that one of the chain's stores in Wichita, Kansas, had been robbed two weeks prior to defendant's trial. Williams cited this robbery in his motion for a new trial which was denied by the trial judge.

 The Court of Appeals, in Brown v. United States, 356 F.2d 230, 233 (10th Cir. 1966) has dealt with this problem before and has said: "Disruptive consequences to the trial of criminal cases are suggested by permitting defense counsel to come forth after conviction and successfully contend that, notwithstanding the absence of actual bias, and notwithstanding his own failure sufficiently to pursue voir dire

---

7. Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

8. Sadler v. United States, 303 F.2d 664 (10th Cir. 1962); Minner v. United States, 57 F.2d 506 (10th Cir. 1932).

inquiry to expose possible predilections on the part of the prospective juror, that nevertheless probable prejudice must be imputed to the juror as a matter of law and a new trial thereafter granted. 'A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict.' [Citing] Spivey v. United States, 5th Cir., 109 F.2d 181, 186, cert. denied 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401."

This case is controlled by Brown.[9] In Brown, defense counsel asked the jury on voir dire whether any of them or their immediate family had ever been the victim of an attack on their person. There was no response. Subsequent to the trial it became known that the brother of one of the jurors had been murdered some years prior.

The issue here, like in Brown, as stated on page 232 of 356 F.2d of the opinion, "[I]s whether the circumstances of the case compel an imputation of inherent bias to the juror as a matter of law." No actual bias has been shown from the juror's failure to disclose the Wichita robbery in response to the question. It has not been shown that juror Dillon intentionally or even inadvertently failed to tell the court about the Wichita robbery. The robbery of one of the sister stores in Wichita is remote enough from the questions asked the jury panel to make it impossible to conclude that juror Dillon knew he should inform the court of the robbery (if indeed he did know of the robbery), but did not do so in an effort to deceive and mislead the court. There is no indication of positive nondisclosure such as in Consolidated Gas & Equipment Co. of America

v. Carver, 257 F.2d 111 (10th Cir. 1958), where, but for the juror's equivocations, he would have been excused for cause.

The court does not look favorably upon raising questions of possible prejudice on the part of a juror after the jury has returned a conviction.[10] In the absence of a showing of actual bias or an intentional withholding of the facts, there is little in the record from which the court can conclusively presume that the non-disclosure was obvious disqualification and inherent prejudice as a matter of law.[11] Whether juror Dillon had any preconceived enmity, prejudice, or bias against defendant is a matter of supposition. The fact that juror Dillon might have been peremptorily challenged by defendant is not alone sufficient to reverse defendant's conviction.[12] Defendant is entitled to a fair trial, but not a perfect trial.

The action of the trial court below in denying the motion for new trial was not a clear abuse of discretion.

We have carefully read and considered the entire record in the case and must conclude that Williams was afforded a fair and impartial trial and the judgment and sentence is affirmed.

FAHY, Senior Circuit Judge (concurring):

I concur in affirmance and in Judge Hill's treatment of the issue of (1) the trial judge's responses to the jury's inquiry about the possible testimony of Deloris Ware, and (2) the responses of certain jurors on the voir dire.

I wish to comment, however, on the contention of appellant that the prosecution coerced or threatened Deloris Ware, intending to prevent her from testifying for the defense. The prosecutor of

9. See also Welch v. United States, 371 F. 2d 287 (10th Cir. 1966); Deschenes v. United States, 224 F.2d 688 (10th Cir. 1955).

10. Woodring v. United States, 376 F.2d 619 (10th Cir. 1967); cert. denied, 389 U.S. 885, 88 S.Ct. 153, 19 L.Ed.2d 182.

11. Brown v. United States, 356 F.2d 230, 233 (10th Cir. 1966).

12. DeRosier v. United States, 407 F.2d 959 (8th Cir. 1969).

course would have had the right to impeach her had she testified, but his comments indicate that he might have intimidated her from doing so. If she had been aware of his remarks, I think the prosecution might have interfered unduly with the conduct of the defense. I do not suggest that the prosecutor's remarks amounted to obstructing justice as defined in 18 U.S.C. § 1503, for the criteria governing that offense vary from those for determining the question of error in the trial. Nevertheless, I find no reversible error in this matter because, as Judge Hill points out, we cannot conclude that the comments which disturb me were brought to the attention of Deloris Ware or were the reason she did not testify.