**Henry Clay HUGHES, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–402.**

Court of Criminal Appeals of Oklahoma.

Sept. 16, 1974.

Rehearing Denied Dec. 17, 1974.

Don. Anderson, Public Defender, Henry Clay Hughes, pro se, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., James D. Bednar, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge.

Appellant, Henry Clay Hughes, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–2695, for the offense of Robbery with Firearms, in violation of 21 O.S.Supp.1973, § 801. The jury recommended, and the court imposed, a sentence of fifty (50) years imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The robbery of which defendant was convicted occurred on the morning of September 1, 1973, in a pharmacy located in Mercy Hospital, Oklahoma City. The two pharmacists on duty at the time, Bill Snider and Pat Smith, positively identified defendant as the man who obtained from them, at gunpoint, a quantity of pantopon (a derivative of morphine) and cocaine crystals. Mr. Snider also stated that State's Exhibit 1, a .357 Magnum revolver taken from defendant at the time of his arrest, was similar to the one used in the robbery. Also testifying for the State was Detective Claude Shobert of the Oklahoma City Police Department. He testified that he had been involved in some aspects of the investigation of the robbery, and also described the circumstances of defendant's arrest 25 days after the crime. He positively identified State's Exhibit 1 as the revolver taken from defendant at the time of his arrest.

In his first proposition of error, defendant argues that the in-court identification of him by the two victims, Snider and Smith, was tainted because they had been shown photographs of defendant shortly before observing a lineup at which they identified him. In examining the transcript, we note that both witnesses testified that they were shown various groups of mug shots in the weeks following the robbery. They were also shown a group of pictures, including several of defendant, a few minutes before a lineup which was conducted about three weeks after the robbery. Without belaboring what we view to be a tenuous assignment of error, we note that both witnesses clearly testified in an in camera hearing held to determine the validity of the identifications, that their identification of defendant was based on the view they had of him at the time of the robbery, and not, to any great extent, on the photographs or on the lineup. Witness Smith, at Tr. 12 and 13, was questioned as follows:

"Q. I don't know if you caught the subtlety of Counsel's question, but basically he asked you if you are more sure today because you have had those identifications.

Let me ask you whether you have seen these aids or not, are you sure in your own mind this is the defendant that committed the crime?

A. Yes.

Q. Is that entirely independent of any help or anything else—of viewing pictures or in the line-up?

A. Yes."

Mr. Snider testified at Tr. 18, as follows:

"Q. When the defense Counsel asked if you recognized him as a result of that picture—let me ask it to you this way.

Do you recognize him solely because you saw that picture or from the person that committed the crime?

A. I recognize him because he was the man that committed the crime.

Q. Is there any doubt in your mind if you had not seen the pictures of the line-up that you couldn't pick him out today as being the man who committed the crime?

A. No doubt."

In view of the above quoted testimony, we find defendant's first assignment of error to be without merit.

■ In his second assignment of error, defendant claims that State's Exhibit 1, the revolver, was inadmissible as the fruit of an illegal seizure because, defendant further argues, the police did not have probable cause to arrest him.

Detective Shobert, in describing the events culminating in defendant's arrest, stated that he had received a tip from a confidential informant about 15 minutes before defendant's arrest. Acting on this tip, and matching it with the description of the robber given to the police earlier by the two victims, he and Officer Weed went to defendant's residence. They did not have an arrest warrant. Arriving at approximately 4:30 in the afternoon, they knocked on the door. Defendant, who was acquainted with Officer Weed, came to the door, at which point Detective Shobert displayed a badge and identified himself as a police officer. Defendant immediately stepped back and reached for his pocket. The officers went through the partially opened door and subdued him. From defendant's pocket they removed a loaded .357 Magnum revolver (State's Exhibit 1).

We find it unnecessary to consider the question of whether the informant's tip was enough to establish probable cause to arrest, in view of the fact that an arrest

had not yet taken place at the time the revolver was seized. Rather, the officers had merely knocked on the door and identified themselves. When defendant attempted to draw a gun on them, they had ample justification in taking reasonable steps to protect themselves. Reference to a portion of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), cited by defendant in his pro se brief, is enough to allow us to dispense with this contention:

"  .  .  .  [T]here is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

We, accordingly, find defendant's second assignment of error to be without merit.

■■ In this third proposition, defendant claims reversible error in the fact that one of the jurors, Mr. Rio Eneas Nicar, was a licensed attorney who did not reveal

his status during voir dire. In considering this argument, we refer to the transcript of a hearing on defendant's Motion for New Trial, in which the same question was ruled on by the trial court. Therein, we find the following series of questions by defense counsel:

"Q. (By Mr. Jordan) Yes, sir. I said you were asked by the defense attorney, who was me, whether or not there was anything known to you and unknown to me that would affect your qualifications as a juror in this case?

A. Yes, I was asked that question.

Q. And, you did not at that time disclose the fact you were a licensed attorney?

\* \* \* \* \* \*

A. No, I didn't disclose at that time I was a licensed attorney."

Mr. Nicar further testified that he had never been engaged in the practice of law, had never filed a case, had never written a contract or will, and was employed full time by the Social Security Administration in a position which did not require a law degree. He had paid his Bar Association dues since his admission to the Bar in 1969, and had allowed himself to be listed as an attorney in the Oklahoma Legal Directory. He further testified that he anticipated entering into the practice of law in the future when he had retired from his present position. This, he said, was his motivation for paying his Bar Association dues, in that he feared that future Bar Association regulations might require him to retake the Bar examination or meet other revised requirements if he allowed his Bar Association dues to lapse. He explained that he had answered defense counsel's voir dire in the above quoted manner because, after consultation with several judges, he had determined he was not "engaged in the practice of law"; hence was not disqualified by 38 O.S.1971, § 28, which reads as follows:

"B. Persons who are not qualified to serve as jurors are:

\* \* \* \* \* \*

5. Licensed attorneys engaged in the practice of law . . ."

Whether or not Mr. Nicar was imprudent in not revealing his status is not really the question before us; rather, we limit our inquiry as to whether or not he was "engaged in the practice of law," as per the above quoted statute. We hold that he was not, and hence, was not disqualified from jury service. Under such circumstances, and particularly in the absence of any showing of prejudice by defendant, we conclude that the trial court did not err in overruling defendant's Motion for New Trial. Accordingly, we find this assignment of error to be without merit.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.