Henry Clay HUGHES, Jr.,
# 87476, Petitioner,

v.

STATE OF OKLAHOMA, Respondent.

No. CIV–76–0463–D.

United States District Court,
W. D. Oklahoma.

July 27, 1976.

37

Henry C. Hughes, Jr., pro se.

Larry Derryberry, Atty. Gen. by Kay Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl., for respondent.

## ORDER

DAUGHERTY, Chief Judge.

This is a proceeding for Writ of Habeas Corpus by a State prisoner confined in the Oklahoma State Penitentiary, McAlester, Oklahoma, by virtue of the judgment and sentence of the District Court of Oklahoma County, State of Oklahoma, in case No. CRF–73–2695. He contends herein that said judgment and sentence is invalid on the following grounds:

1. "The identifying witnesses in-court identification of petitioner was tainted by an impermissibly suggestive photographic

procedure immediately prior to viewing him in a pre-information lineup."

2. "The Oklahoma City Police Department did not have arrest or search warrants, nor did probable cause exist to arrest petitioner. Hence, State's exhibit No. 1 (pistol) was clearly a fruit of an illegal seizure and in violation of Fourth Amendment of the United States Constitution."

3. "Reo Eneas Nicar, a juror, was a licensed attorney and member of the Oklahoma Bar Association and by concealing this information on voir dire infringed upon petitioner's right to a fair and impartial trial assured by the Sixth Amendment to the United States Constitution."

The court has examined the original record and trial transcript furnished by the State. It appears therefrom that the Mercy Hospital Pharmacy was robbed September 1, 1973. The petitioner was arrested on September 24, 1973, and taken to the station house. Two employees of the Pharmacy were summoned to the Police Headquarters where they were shown a photographic display. After picking the petitioner's picture from the array of photographs shown them a lineup was conducted in which they were able to identify the petitioner as the robber. Thereafter, on September 27, 1973, an Information was filed charging the petitioner with Robbery with Firearms in violation of 21 O.S.A. § 801. After a trial by jury the petitioner was convicted and sentenced on January 4, 1974, in accordance with the verdict of the jury to 50 years imprisonment. The petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals which affirmed the judgment and sentence on September 16, 1974. *Hughes v. State,* 529 P.2d 510. Subsequently the petitioner filed an application for post conviction relief in the sentencing court which denied relief without an evidentiary hearing. An appeal of the District Court's order was perfected to the Oklahoma Court of Criminal Appeals, case No. PC–76–368. On May 24, 1976, the appeals court entered an order affirming the district court's denial of post conviction relief. The petitioner therefore has exhausted the remedies available to him in the courts of the State of Oklahoma.

Prior to the introduction of any evidence at the trial the court conducted an in camera hearing concerning the circumstances of any pretrial lineup. The defense called two witnesses, Pat Smith and Bill Snider, who were the pharmacy attendants present at the robbery. Shortly after the robbery Pat Smith described the perpetrator as being about 5' 8" or 5' 9" tall, weighing 135 to 150 pounds, between 25 and 30 years of age. She attended a lineup in the company of Bill Snider. Shortly before they went to the lineup they were shown nine or ten pictures of various persons. The officers who showed them the photographs made no comments concerning the pictures. She was able to recognize the robber in this display. According to her the lineup consisted of six persons who were about the same age and height. Although the petitioner had grown a mustache which he did not have at the time of the crime she was able to identify him in the lineup. She responded to defense counsel that if she had not seen the picture, she would have identified petitioner at the lineup anyway. (Tr. 8.) This witness did not testify at the preliminary hearing but she did acknowledge that she had seen the petitioner at that time. She further testified that she was sure the defendant was the robber and that her identification was independent of any help, or of viewing the pictures or the lineup. (Tr. 12.)

The testimony of Bill Snider was similar to that of Pat Smith. He gave the investigating officers a description of their assailant which stated that he was about 135 to 140 pounds in weight, 5' 8" tall and had dark hair. He did not have a mustache. He was wearing sunglasses. He estimated the number of pictures which they were shown prior to the lineup as being 10 to 20. He was also able to pick the robber out of these pictures. At the lineup he picked out the petitioner although he then had a slight mustache. He concluded his testimony by replying to the prosecutor:

"Q . . . Do you recognize him solely because you saw that picture or from the person that committed the crime?

A I recognize him because he was the man that committed the crime.

Q Is there any doubt in your mind if you had not seen the pictures of [sic] the line-up that you couldn't pick him out today as being the man who committed the crime?

A No doubt." (Tr. 18.)

At the conclusion of the in camera hearing the court overruled the Motion to Suppress the identification testimony.

The hearing afforded by the trial judge satisfies fully the requirements of 28 U.S.C.A. § 2254 and the findings are presumed to be correct. After independent review of these proceedings conducted by the trial judge this court finds that there was factual and legal support for the adjudication and approves the same. This court, therefore, is not required to hold an evidentiary hearing on the petitioner's identification claim. See *Maxwell v. Turner,* 411 F.2d 805 (C.A.10 1969). The State in this case made no effort to buttress its in-court identification by eliciting the challenged pretrial identification. It was only through the questions asked by petitioner's counsel on cross-examination that the jury became aware of any pretrial identifications by the witnesses. The evidence discloses no suggestiveness in the manner in which the photographic display was presented or the lineup conducted. If there had been improper suggestiveness it would not alone require the exclusion of identification testimony. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In that case the Supreme Court recognized the rule of admissibility to be whether there is substantial likelihood of misidentification under the "totality of the circumstances." Critical factors to be evaluated in such consideration include "the opportunity of the witness to view the criminal from the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and confrontation." 409 U.S. at 199, 93 S.Ct. at 382. By each of these criteria the reliability of the identification of the petitioner is demonstrated. The witnesses had opportunity to view the robber in the pharmacy in the daytime where the transaction covered between 5 to 15 minutes. They were attentive enough to the intruder's appearance to give the investigating officers a description which the petitioner does not contend does not match his physical appearance. There apparently was no hesitancy in making the identification by either of the witnesses. Their visual observations were confirmed by recognition of petitioner's voice. The lineup took place only about three weeks after the commission of the offense.

The petitioner's allegations that he was forced to appear at the preliminary hearing in jail clothing do not establish that his trial identification was tainted. This occurred after petitioner's identification by both witnesses at the lineup. A subsequent confrontation with the petitioner in jail clothing would appear to have little significance after the identification by the witnesses in the neutral setting of the lineup. Nor do petitioner's belated allegations in his Traverse that he was denied counsel at the lineup amount to a constitutional violation of his rights. He alleges the lineup took place on September 25th. The Information was not filed until September 27th. Since the lineup was conducted prior to the time that any formal charges had been filed against the petitioner he was not entitled to counsel at that time. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

It is clear from the court's examination of the records that the in-court identification by the witnesses had an independent origin and that it can be said with certainty that these witnesses would have made the same identification of petitioner at the time of trial if there had been no intervening pretrial confrontations.

■ At the trial petitioner moved to suppress as evidence a revolver seized at the time of his arrest. After an in camera hearing the court overruled the motion and permitted the prosecution to introduce it into evidence. The petitioner's claim that the weapon had been obtained in violation of his constitutional rights was also considered and rejected on direct appeal. It is not now available to him as a ground for federal habeas relief. On July 6, 1976, in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, the Supreme Court ruled:

"In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force."

The Court declined to make its ruling prospective only. 428 U.S. 495 n. 38, 96 S.Ct. 3052.

The petitioner's factual allegations in support of his final contention are not sufficient to constitute a denial of a federal constitutional right. The petitioner alleges, and the court's review of the record confirms, that the foreman of petitioner's jury was a licensed attorney who was employed full time with the Social Security Administration in a supervisory capacity which did not require a degree in law. Initially admitted to the Bar on April 1, 1969, he was current in his Bar dues and listed as an attorney in the Oklahoma Legal Directory. However, he has never filed a case, never appeared in court as an attorney, never written a contract or a will, and denied in a hearing on a Motion for New Trial that he had ever been engaged in the practice of law. On voir dire examination he was asked by petitioner's attorney whether or not there was anything known to him and unknown to the attorney that would affect his qualifications as a juror in the case and responded negatively. In the post trial hearing he justified such a response on the basis that four of the district judges of Oklahoma County had advised him that he was not legally disqualified as a juror.

In construing the Oklahoma law which disqualifies from service as jurors "licensed attorneys engaged in the practice of law," 38 O.S.1971, § 28, the Oklahoma Court of Criminal Appeals concluded that the person was not disqualified to serve and that in the absence of any showing of prejudice the trial court had not erred in overruling the petitioner's Motion for a New Trial.

■ The prospective juror did not give a false answer on voir dire. The petitioner argues that he should have disclosed that he was a licensed attorney. However, he was not asked if he was a licensed attorney but was asked about his qualifications. The Court of Criminal Appeals in interpreting the Oklahoma Statute has conclusively determined that he was not disqualified. A federal court must accept the interpretation of State law unless it is inconsistent with the fundamental principles of liberty and justice. See *Francia v. Rodriguez,* 371 F.2d 827 (C.A.10 1967); *Ratley v. Crouse,* 365 F.2d 320 (C.A.10 1966); and *Mesmer v. Raines,* 298 F.2d 718 (C.A.10 1961). There is no constitutional bar to an attorney or a person with a legal education serving on a jury. The States are at liberty to prescribe appropriate qualifications for jurors so long as the source reasonably reflects a cross section of the population. *Carter v. Jury Commission of Greene County,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970). The plan for juror selection for this district does not exclude attorneys from service but does designate *active* attorneys, among others, as those who may request to be excused from jury service.

■ In *Brown v. United States,* 356 F.2d 230, 233 (C.A.10 1966) the court in an analogous situation stated:

"Disruptive consequences to the trial of criminal cases are suggested by permitting defense counsel to come forth after

conviction and successfully contend that, notwithstanding the absence of actual bias, and notwithstanding his own failure sufficiently to pursue voir dire inquiry to expose possible predilections on the part of the prospective juror, that nevertheless probable prejudice must be imputed to the juror as a matter of law and a new trial thereafter granted. 'A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict.' *Spivey v. United States,* 5th Cir., 109 F.2d 181, 186, cert. denied 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401."

Even if there had been a statutory disqualification undisclosed by one of the jurors the petitioner could only succeed upon a showing of actual bias or prejudice. *United States v. Crockett,* 514 F.2d 64 (C.A.5 1975).

 The petitioner's assertion that he was denied the opportunity to exercise a peremptory challenge to this juror because he did not know of his legal background is not cause enough to invalidate the conviction. In *Williams v. United States,* 418 F.2d 372, 377 (C.A.10 1969) the court stated:

"The court does not look favorably upon raising questions of possible prejudice on the part of a juror after the jury has returned a conviction. In the absence of a showing of actual bias or an intentional withholding of the facts, there is little in the record from which the court can conclusively presume that the nondisclosure was obvious disqualification and inherent prejudice as a matter of law. Whether juror Dillon had any preconceived enmity, prejudice, or bias against defendant is a matter of supposition. The fact that juror Dillon might have been peremptorily challenged by defendant is not alone sufficient to reverse defendant's conviction. Defendant is entitled to a fair trial, but not a perfect trial."

Here there is no showing of actual prejudice or bias. The petitioner speculates that the juror might have invaded the province of the court and "could have been quite influential in interpreting the trial court's instructions to the rest of the jury panel in determining his guilt or innocence." He recognizes, however, that it is only speculation and admits that he does not know what influenced the minds of the jury or contributed to the verdict. In *Latham v. Crouse,* 330 F.2d 865, 868 (C.A.10 1964) the court pointed out:

"Prejudice must be established 'not as a matter of speculation but as a demonstrable reality.'"

This court may presume that the jurors were true to their oaths and conscientiously observed their instructions and admonitions of the court. *Ellis v. State of Oklahoma,* 430 F.2d 1352 (C.A.10 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971); *Baker v. Hudspeth,* 129 F.2d 779 (C.A.10 1942).

As evidenced by the foregoing analysis there is no requirement for an evidentiary hearing in this court and the Petition for Writ of Habeas Corpus will be denied.

IT IS SO ORDERED.