**Arturo Coll CARPINTERO, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7063.**

United States Court of Appeals First Circuit.

July 16, 1968.

---

McENTEE, Circuit Judge.

Defendant was convicted by a jury on three counts of narcotics violations. On appeal he raises numerous points none of which are supported by citation of legal authority. In our view only three of these points are worthy of discussion, the first and most important of the three being that two of the jurors were improperly empanelled. As a basis for this contention defendant alleges that a certain juror named Balzac had been a fellow law student and an acquaintance of Assistant United States Attorney Figueroa, who participated in the trial; that Miguel Herrero, a brother of Assistant United States Attorney Blas Herrero, who also represented the government in this case, was a member of the same class[1] and that Balzac was an acquaintance of said Miguel Herrero. Additionally, it is alleged that one Gil, the foreman of the jury, had been defendant's teacher some thirty years before and sometime before the trial had made remarks indicating that he had prejudged defendant's guilt.

Some of the documents filed in connection with defendant's motion for a new trial shed light on this issue. In support of said motion one Castro Mercado filed an affidavit to the effect that he and the defendant had studied together under Gil in 1937; further, that he had a conversation with Gil in early October 1967[2] during which Gil said that the defendant would not be able to get out of the narcotics trouble he was in with the federal authorities and would never straighten up.

Another sworn statement was filed by Fernando Villamil, an attorney who overheard conversations in the courtroom on November 8, 1967, while the jury was deliberating. According to Villamil, Figueroa stated to one of the marshals,

---

Howard F. Cerny, New York City, with whom Raul Torres Gonzalez Santurce, P. R., was on brief, for appellant.

Blas C. Herrero, Jr., Asst. U. S. Atty., with whom Francisco A. Gil, Jr., U. S. Atty., and Charles E. Figueroa, Asst. U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

---

1. It appears that Figueroa, Miguel Herrero and Balzac, with about ninety others, began their studies at the University of Puerto Rico Law School in 1955. Figueroa and Herrero graduated in 1958, whereas Balzac discontinued his legal studies after the second year. The three men took certain classes together during their first year. It seems to be defendant's position that both Balzac and Figueroa were aware of this relationship at the time of the voir dire.

2. The trial began November 6, 1967.

"I have a man in the jury that was in law school with me" and later to a brother of Assistant United States Attorney Herrero, "Miguel, you remember the fellow who was sitting there"; (pointing to seat in the jury box) "Balzac, he went to law school with us."

In his affidavit Figueroa asserts that he made no disclosure to the court because it was not until towards the end of the trial that he recognized Balzac; that his statement to Miguel Herrero in which he said he had not seen Balzac since their law school days was merely an attempt to see if Herrero also recognized Balzac.[3]

Balzac and Gil also signed affidavits. Balzac averred that while he did attend law school as reported, he had no recognition of Figueroa until their former relationship was called to his attention after the trial.[4] Juror Gil stated that although he had taught the defendant years earlier, he did not recognize him until a "late stage" in the trial and thought it inappropriate to mention the matter at that point.[5] He further stated that his recognition of the defendant did not cause him to lose his impartiality and specifically denied ever making the statement attributed to him by Mercado in the latter's affidavit.[6]

■ On the basis of these affidavits the trial court found that the acquaintanceship between Balzac and the two government prosecutors "was purely casual and no prejudice occurred against defendant by reason of such acquaintanceship"; also that juror Gil did not

make the statement with reference to defendant which was attributed to him. Certainly we cannot say that these findings were clearly wrong. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946). In connection with the first finding, see Garland v. United States, 182 F.2d 801 (4th Cir. 1950); Roberson v. United States, 249 F.2d 737 (5th Cir. 1958), cert. denied 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715.

■■ Defendant also alleges that he was deprived of his right to a fair trial because of several improper remarks made by the prosecutor to the jury. We refer in particular to the prosecutor's statement made on at least two occasions during the trial that it was the jury's "duty" to convict the defendant. No objection was made to these statements at the time. While this certainly was not plain error, we wish to make it clear that we do not look with favor on such a remark. Obviously it is the jury's duty to consider and decide the case on its merits.

■ The only remaining contention worthy of mention is that the requirement of English-speaking juries is unconstitutional in that it constitutes improper discrimination. We have already considered and rejected this contention in Miranda v. United States, 255 F.2d 9 (1st Cir. 1958). For a fuller discussion of this question see United States v. Mirabal Carrion, 140 F.Supp. 226, 229–231 (D.P.R.1956).

Affirmed.

3. Deputy Marshal Rodriguez, who also overheard the Figueroa-Herrero colloquy, corroborated Figueroa and explicitly repudiated Villamil's version of the conversation.

4. Although both Figueroa and Miguel Herrero were in the same law school class, defendant chiefly emphasizes Figueroa, presumably because Figueroa was involved directly in the prosecution whereas Miguel was only indirectly involved through his brother.

5. During the trial the defendant was referred to as "Tuti" Coll. It was the use

of this boyhood nickname that first caused Gil to recognize his former pupil. Although Gil refers to the "late stage" of the trial, the record reveals that the nickname "Tuti" was used quite early in the trial.

6. Gil in his statement denied making the "statements allegedly made by me *to* Arturo Coll Carpintero." (emphasis supplied). Presumably this should read not "to" but e. g. "concerning," since Mercado alleged that the remark was made to him, not to defendant.