UNITED STATES of America,
Plaintiff-Appellee,

v.

Alexander ROBBINS, Defendant-
Appellant.

No. 74-1007.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1974.

James J. Hogan, Miami Beach, Fla., Richard M. Gale, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., William R. Northcutt, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and RIVES and DYER, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Defendant Robbins, a practicing medical physician, was convicted for illegally dispensing Tuinal capsules in violation of 21 U.S.C. § 841(a). On appeal defendant argues that he was denied his Sixth Amendment right to a trial before an impartial jury. One juror, defendant points out, failed to reveal on voir dire —what she later revealed to the other jurors—that her daughter had suffered a serious illness due to the use of prescription diet pills. Concluding that the impartiality of the jury was not so im-paired as to require an interference with its independence, we affirm.

Defendant, Doctor Alexander Robbins, was charged with six counts of knowingly and intentionally dispensing in an unauthorized manner controlled substances in violation of 21 U.S.C. § 841(a). Counts I, II, IV, and V charged defendant with illegally dispensing Tuinal capsules, Count III with illegally dispensing Percodan capsules, and Count VI with illegally dispensing Dexedrine capsules.

A jury found the defendant guilty as to Count II and not guilty as to the other five counts. Defendant's sole allegation on appeal is that he was denied his right to a fair trial by an impartial jury because one juror displayed a bias against the cause of the defendant—a bias that she wrongfully failed to reveal during voir dire. Defendant asserts that had this bias been revealed, he would have exercised a peremptory challenge against the juror.

The facts on which defendant bases his appeal did not come to light until after the jury rendered its verdict. After the trial, two jurors, Messrs. Adams and Herder, approached defense counsel and registered their concern about statements made in the jury room by juror Ms. Landesman that her daughter was hospitalized because of the use of prescription diet pills.

The apparent disparity between juror Landesman's responses in voir dire and her statements in the jury room led defense counsel to file an application to interview jurors. A special hearing was held at which Jurors Adams, Herder, and Landesman testified. At the conclusion of the hearing the District Judge denied defendant permission to interview the other jurors, motion for new trial was later denied, and a final sentence was entered including probation.

■■ We affirm the actions of the District Court. In doing so we recognize the need to consider and balance two important interests, both appearing to be at odds with one another in this fact situation. First is the need on one

hand to furnish the defendant with an impartial jury to adjudicate on the evidence as opposed to personal biases or preconceived notions, Rubenstein v. United States, 10 Cir., 1955, 227 F.2d 638, 642, the second is the need, on the other hand, to preserve the independence of the jury—to insure that jury deliberations will be unfettered by fears of constant scrutiny, Rubenstein at p. 643, *supra*. With these thoughts in mind we proceed with an examination of the facts before us.

### Voir Dire—To Tell The Truth

During the voir dire of jurors, Juror Landesman by silence acquiesced in negative answers to the following questions relative to the case to be tried: (1) whether any juror would be unable to be fair or impartial, (2) whether any juror would be slanted for or against the Government or the defendant, (3) whether any juror's close friends or relatives had problems with the type of substances listed in the indictment or other narcotics, (4) whether any juror had had bad experiences with doctors, and (5) whether any juror had been prescribed dexedrine or dexumil which is sometimes used as a diet pill. Questions (3) and (4) are the critical ones here.

At the post-trial special hearing, Juror Landesman denied that she misstated the facts during voir dire. She insisted that she had answered the questions truthfully according to her understanding, was not prejudiced against the defendant or the medical profession, and in fact respected the medical profession. To cap it all she said she had listened carefully to all the evidence and based her judgment on that alone. Carpintero v. United States, 1968, 1 Cir., 398 F.2d 488, 490.[1]

In addition, she stated that she understood the questions concerning the drug substances to mean those listed in the indictment. The diet pills her daughter took apparently did not contain any of those substances. We understand readily why the District Judge accepted Juror Landesman's testimony as to her reasons for answering the voir dire questions as she did.[2] In fact, both the defendant and the prosecution agree that her voir dire answering attitude was one of openness and candor.

### Behind Closed Doors

While Juror Landesman's voir dire testimony is a matter of record and is thus not in dispute, what went on behind the closed doors of the jury room is. It is not disputed that during the jury deliberations Juror Landesman revealed that she had a daughter who had had infectious hepatitis apparently because of prescription diet pills and a severe diet. Just how Juror Landesman made these revelations is in dispute and appears in fact to be the recollected word of one juror pitted against another.

As the post-trial hearing Juror Adams stated that although he was unable to recall her exact words, Juror Landesman seemed to be biased against the medical profession and had stated that she had in fact lied during voir dire. But Adams was clear that Juror Landesman never referred to the substances listed in the indictment or indicated any bias towards the defendant. Juror Herder recalled Juror Landesman as stating in almost a boasting way that on voir dire she had tricked and lied to be a member of the jury. His understanding was that Juror Landesman's daughter had an addiction problem.

1. In *Carpintero* defendant challenged the impartiality of a juror who was an acquaintance. This Court upheld the District Court's finding of impartiality based on the juror's affidavit that "his recognition of the defendant did not cause him to lose his impartiality and specifically denied ever making the statement attributed to him. . . ." 398 F.2d at 490.

2. When voir dire questions can be interpreted logically to mean something else to a juror, then a literal nondisclosure on another reading of the question cannot be assumed merely for failure to answer the question according to its intended meaning. See Brown v. United States, 10 Cir., 1966, 356 F.2d 230, 233.

Juror Landesman, on the other hand, denied ever saying that she lied, that instead another juror stated that Ms. Landesman lied after she talked about her daughter. She admitted that her revelation about her daughter was emotional but that she in no way connected it with the offenses for which the defendant was charged.

With the testimony in this shape the trial judge declined to order the appearance of all or most of the other jurors. Although the jurors' testimony is conflicting as to which juror spoke what words during this part of the deliberations, it is clear that the atmosphere was one of high emotions, due in part to the active participation of all twelve jurors.

■ On these facts—or more accurately the lack of certainty of the facts —then, we must determine whether Juror Landesman's conduct denied defendant a fair and impartial jury or whether .her conduct falls under the protection of freedom of deliberation in the jury room. We hold that defendant received a fair and impartial jury trial.

■ In reaching this conclusion, we begin with the understanding that ruling on suggestions of impartiality of the jury is within the discretion of the trial judge, and an abuse of that discretion must be clear.[3] Irvin v. Dowd, 1961, 366 U.S. 717, 723, 6 L.Ed.2d 751, 756, 81 S.Ct. 1639; Spies v. Illinois, 1887, 123

U.S. 131, 179, 8 S.Ct. 21, 22, 31 L.Ed. 80, 90.

■ When the matter of possible jury bias arose, the trial judge conducted a post-trial hearing on the matter. A part of that hearing is the presumption that the jury is impartial and unbiased, so it was incumbent on defendant to prove otherwise.[4] Beck v. Washington, 1962, 369 U.S. 541, 558, 82 S.Ct. 955, 8 L.Ed.2d 98; United States v. Johnson, 1946, 327 U.S. 106, 112, 66 S.Ct. 464, 90 L.Ed. 562, 566; United States v. Nadaline, 5 Cir., 1973, 471 F.2d 340, 344; United States v. Cashio, 5 Cir., 1970, 420 F.2d 1132, 1136; Carpintero v. United States, 1 Cir., 1968, 398 F.2d 488, 490; Fabian v. United States, 8 Cir., 1966, 358 F.2d 187, 191, cert. den., 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed.2d 58; Brown v. United States, 10 Cir., 1966, 356 F.2d 230, 233.

■ In the face of unequivocal testimony by Ms. Landesman that she felt she was unbiased and had judged the defendant solely on the evidence presented in Court,[5] and her explanation that during voir dire she in no way connected in her mind or responses her daughter's experience with diet pills with any of the questions asked, the trial court was entitled to credit these assertions.[6]

Although Jurors Herder and Adams both testified that Juror Landesman said she lied, other aspects of their testimony warranted the Judge in impliedly find-

3. Concerning the trial court's ruling on the impartiality of a juror, the Supreme Court long ago stated in Reynolds v. United States, 1878, 98 U.S. 145, 156, 25 L.Ed. 244, 247, that it "must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court."

4. In United States v. Cashio, 5 Cir., 1970, 420 F.2d 1132, 1136, we stated that the defendant must overcome this presumption by a preponderance of the credible evidence. See United States ex rel. Darcy v. Handy, 1956, 351 U.S. 454, 462, 76 S.Ct. 965, 100

L.Ed. 1331, 1338; Harris v. United States, 9 Cir., 1966, 412 F.2d 384, 386; Brown v. United States, 10 Cir., 1966, 356 F.2d 230, 233.

5. In United States v. Nadaline, 5 Cir., 1973, 471 F.2d 340, 344, this Court allowed the juror to rebut allegations of bias by his own statement to the contrary.

6. At least two Circuits have held that the defendant cannot merely assert that he was harmed because he would have exercised a peremptory challenge against a juror. He must instead show that actual bias existed because the juror was a member of the jury. See Williams v. United States, 10 Cir., 1969, 418 F.2d 372, 377; DeRosier v. United States, 8 Cir., 1969, 407 F.2d 959, 963.

ing the contrary, especially in view of high emotions in the jury room.[7]

■ In trying to evaluate this problem the Judge could, and probably did, consider the fact that the jury acquitting the defendant on five of the six counts, convicted him only on the count for illegally dispensing Tuinal capsules (commonly used as sleeping pills or depressants). And Juror Landesman's concern came from diet pills as to which defendant was acquitted.[8]

■ Under these circumstances the District Judge could reasonably conclude that further testimony by other jurors would only yield more conflicting testimony.

■ This Court is always quick to guard the right of a defendant to an impartial jury,[9] but that right has been met in this case. The right of the accused to an impartial jury is preeminent, but the right of the jury in its impartiality to be independent is equally paramount.[10]

Affirmed.

---

7. The instant case is similar to *Williams, supra,* in that nothing in the record can "conclusively presume that the non-disclosure was obvious disqualification and inherent prejudice as a matter of law." *Id.* at 377. The Court concluded that defendant "is entitled to a fair trial, but not a perfect trial." *Id.*

8. Count VI charged defendant with illegally dispensing Dexedrine capsules, commonly used as diet pills.

9. In Farese v. United States, 5 Cir., 1970, 428 F.2d 178, $750.00 in cash was found by the jury when examining a brief case that had been entered into evidence. This Court held that the defendant had been prejudiced since the money had not been introduced as evidence in the courtroom and yet the jury considered it as evidence.

10. In Sinclair v. United States, 1928, 279 U. S. 749, 765, 49 S.Ct. 471, 476, 73 L.Ed. 938, 946, the Supreme Court upheld a contempt ruling against a party who hired detectives to follow and observe members of the jury. In so doing, the Court expressed the importance of independence in the functioning of the jury: "The jury is an essential instrumentality—an appendage—of the court, the body ordained to pass upon guilt or innocence. Exercise of calm and informed judgment by its members is essential to proper

enforcement of law . . .. If those fit for juries understand that they may be freely subjected to treatment like that here disclosed, they will either shun the burdens of the service or perform it with disquiet and disgust." See also Rubenstein v. United States, 1955, 10 Cir., 227 F.2d 638, 643.

This Court too, has emphasized the importance of an independent jury. This delicate independence was broken in Pekar v. United States, 5 Cir., 1963, 315 F.2d 319, when the Assistant United States Attorney spoke with a juror during a recess in the trial. There Judge Tuttle stated that such "conduct is not only inexcusable, it is clear grounds for the setting aside of a conviction." *Id.* at 322.

Citing *Pekar,* we again protected the jury from intrusions on its independence by stating in United States v. Harry Barfield Co., 5 Cir., 1966, 359 F.2d 120 that our

system of trial by jury presupposes that the jurors be accorded a virtual vacuum wherein they are exposed only to those matters which the presiding judge deems proper for their consideration. This protection and safeguard must remain inviolate if trial by jury is to remain a viable aspect of our system of jurisprudence.

*Id.* at 124. See also Gonzales v. Beto, 5 Cir., 1971, 445 F.2d 1202, 1204; Bowles v. State, 5 Cir., 1966, 366 F.2d 734, 737.