**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**JAMES J. MOORHEAD, Defendant**

Criminal No. 81-30

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**JAMES J. MOORHEAD, Defendant**

Criminal No. 81-29

District Court of the Virgin Islands
Div. of St. Thomas and St. John

June 9, 1981

ROBERT TIGNOR, ESQ., Assistant United States Attorney (Office of the United States Attorney), St. Thomas, V.I., *for plaintiff*

LEONARD FRANCIS, ESQ., St. Thomas, V.I., *for defendant*

SILVERLIGHT, *Judge, Sitting by Designation*

## MEMORANDUM AND ORDER

Defendant James J. Moorhead was convicted by a jury on May 7, 1981, in the District Court of the Virgin Islands, Division of St. Thomas, of eight counts of mail fraud in violation of 18 U.S.C. § 1341, one count of Interstate transportation of fraudulently obtained securities, 18 U.S.C. § 2314, and one count of obtaining money by false pretenses, 14 V.I.C. § 834(2).

Defendant Moorhead moved this Court for a Judgment of Acquittal pursuant to Rule 29 Fed. R. Crim. P. or in the alternative a new trial pursuant to Rule 33 Fed. R. Crim. P. He stated nine grounds for such relief. None of them is sufficient on either basis, and defendant's motion was denied in toto in an oral ruling. The Court, however, at the time of so ruling indicated its intention to supplement its oral ruling by a written memorandum. This writing serves that purpose.

■ Ground one complains that the Court erred in severing and not dismissing Counts II and III of the Territorial Information, Criminal No. 81-29. Defendant makes no allegation how a distinction between severance and dismissal could prejudice *this* trial. Such a motion is appropriate for a potential future trial on those two counts. As the jury heard no evidence on the severed counts, whether they were severed or dismissed had absolutely no effect on this trial.[1]

■ ■ Ground two states that the Court erred in excluding defendant's proposed voir dire questions. The defendant proposed one hundred twenty-eight questions for voir dire. Many of these were covered in the questions asked by the Court, and the rest were irrelevant. This Court notes that defendant does not point to any particular question the omission of which is claimed to be error. As the questions asked by the Court in voir dire were reasonably designed to elicit any prejudice of the jurors and indeed did elicit information of juror bias in several instances, there was no prejudice to the defendant in not reading his lengthy list of proposed voir dire questions. The Court has broad discretion in the conduct of the voir dire, subject to basic notions of fairness. See Fed. R. Crim. P. Rule 24(a), United States v. Segal, 534 F.2d 578, 581 (3d Cir. 1976); United States v. Starks, 515 F.2d 112, 124–25 (3d Cir. 1975); United States v. Furey, 491 F.Supp. 1048, 1053–54 (E.D. Pa. 1980); Kiernan

---

[1] Subsequent to this trial the Government moved for dismissal of Counts II & III of Criminal No. 81-29. This motion was granted.

v. Van Schaik, 347 F.2d 775, 778 (3d Cir. 1965). Defendant has made no specific allegation of unfairness to him deriving from the exclusion or inclusion of any question on voir dire, and this Court finds none.

Ground three claims that juror Mrs. Dora Ryan failed to disclose material and vital information as to her knowledge of the Moorhead family. Defendant claims that if he knew this information at the time of trial he may well have used one of his peremptory challenges to strike Mrs. Ryan from the jury.

Laura Moorhead, the defendant's sister, testified at a post-trial evidentiary hearing. She stated that Dora Ryan had worked for her in a nursery school operated by Mrs. Moorhead for six weeks at the end of 1970 and beginning of 1971. Mrs. Ryan was let go after six weeks because she was "not one of my happy people", to use Mrs. Moorhead's words. She declined to say that she fired Mrs. Ryan; Mrs. Moorhead stated that she acted in a manner so that no hard feelings would result. Mrs. Moorhead was unable to say whether Mrs. Ryan harbored any ill feelings towards her. She and Mrs, Ryan had had no contact since Mrs. Ryan's employment ended.

Defendant claims that Mrs. Ryan should have disclosed this information at voir dire. However, there was no showing that Mrs. Ryan even knew that Laura Moorhead was James Moorhead's sister.

Even if Mrs. Ryan had known that Mrs. Moorhead was the defendant's sister, there is no showing that she concealed this fact. At voir dire prospective jurors were asked several questions concerning their relationship to the defendant: whether they were related to him or were a close friend; whether they had been in close contact with him as a result of business or employment; whether they would disbelieve or believe what the defendant or any other witness would say simply because of his identity. None of these questions went to the specific issue of whether anyone had worked with a member of defendant's family. As the attorney for the government noted, none of the one hundred and twenty-eight voir dire questions proposed by the defendant addressed this specific question either. One prospective juror noted at voir dire that she presently worked with the defendant's brother, and was subsequently dismissed for cause. However, this Court can well believe that even had she remembered it, the fact that 10 years ago she had worked briefly for defendant's sister may well have not seemed significant to Mrs. Ryan.

The question remains, though, whether such a relationship was significant per se. Defendant points to Government of the Virgin

Islands v. Bodle, 427 F.2d 532 (3d Cir. 1970), 7 V.I. 507, for analogy. In that case, a juror's sister had been the victim of a forcible rape and murder four years before the trial in which he sat as juror. The charge was forcible rape; he did not respond to general questions intended to elicit information as to possible prejudice regarding the crime of rape. The Court of Appeals in that case found that the undisclosed information created a *substantial possibility* that the juror was not capable of objective determination of the facts of the case.

Here, Mrs. Ryan's undisclosed connection with the Moorhead family is too slight, tenuous, and innocent to create any real possibility of prejudice on her behalf. Indeed, defendant has not advanced any evidence of prejudice. Mrs. Moorhead noted that the termination of Mrs. Ryan's employment was accomplished so that no hard feelings would result.

■■■■■ This Court did not allow juror Ryan to be examined. After hearing Mrs. Laura Moorhead's testimony, the Court found that there was insufficient basis for a reasonable inference that Mrs. Ryan was incapable of making an impartial determination. To require a juror to be cross-examined concerning possible bias without such a basis would invite a disruption of the jury process. This is especially so in an insular community such as the Virgin Islands. Post-trial examination of jurors would proliferate, and jury service would be discouraged. Courts do not look with favor upon the raising of questions of *possible prejudice* on the part of a juror after conviction. Williams v. United States, 418 F.2d 372, 377 (10th Cir. 1969). Here there was neither a showing of likely prejudice against the defendant on the part of the juror in question, nor a showing of any concealment on the part of the juror. At a post-trial hearing, the presumption is that the jury has been impartial and unbiased. United States v. Robbins, 500 F.2d 650, 653 (5th Cir. 1974); see also Beck v. Washington, 369 U.S. 541, 558 (1962). As defendant has not overcome that presumption, examination of juror Evans was unnecessary.

■■■ Ground four of the motion complains that the Court did not rule on motions for Brady material and discovery under Rule 16 Fed. R. Crim. P. It is the recollection of the Court that it did rule orally on this motion before trial, denying it. In any case, there was a pre-trial omnibus hearing at which the government turned over relevant material to the defendant. It is not clear what material the defendant believes he did not receive. He has not alleged that there was any material presented at trial that he should have received prior to trial

and did not. As defendant alleges no prejudice on this point, and the Court can see no prejudice, there is no merit to this ground even if a formal ruling on the discovery motion was not made.

 Ground five states that certain records of Chicago Bridge and Iron were admitted without proper authentication under Rule 803(6) of the Federal Rules of Evidence. Defendant claims that:

> . . . the source of information or the method or circumstances of preparation indicated lack of trustworthiness by Ms. Josephine Jajch and Mr. Axel Heimer with respect to the records from Public Works Department and Property and Procurement.

The Court had the opportunity to observe both Ms. Jajch and Mr. Heimer on the witness stand, and finds that they were eminently qualified to authenticate the particular records they were called upon to authenticate, as they held positions which brought them into close contact with such records. Also, the credibility of both these witnesses was excellent. Defendant has not explained his grounds for alleging lack of trustworthiness on the part of these witnesses— and the Court finds none.

 Ground six complains that it was error to allow the jury to look at the evidence before the end of trial. At a recess before closing arguments documents admitted into evidence were allowed to go into the jury room. This procedure was adopted to allow the jury to become familiar with the documents. The jurors had repeatedly been instructed not to discuss the case amongst themselves. The simple viewing of documentary evidence before the end of trial is quite proper. Indeed, at the time defendant did not object to the procedure.

 Ground seven complains of the Court's refusal to allow the FBI agent witness to testify concerning a grant of immunity to Mr. Sammy Harthman, Sr. The Court saw no relevance to this information at trial, and continues in this opinion. Harthman was the recipient of services in the form of labor on two water tanks for which the Government of the Virgin Islands paid. This work was the subject matter of the prosection. Harthman was not called as a witness by either government or defendant. Defendant has not presented any argument to show that the question of whether Harthman was given immunity or not has a bearing on the merits of this case.

 Ground eight complains of the removal of the signature and date on the Government of the Virgin Islands information (Criminal

No. 81-29) which was sent to jury for their deliberations. Criminal prosecution cannot properly be instituted unless an indictment or information is signed by an attorney for the government. Rule 7(c) Fed. R. Crim. P., Wright, FEDERAL PRACTICE AND PROCEDURE, Criminal § 123 (1969), In re Grand Jury January 1969, 315 F.Supp. 662 (D.C. Md. 1970). Here the information was signed by the United States Attorney. Before trial, two counts of the Government of the Virgin Islands Information were severed. In order that the jury would not be prejudiced by considering these counts, they were eliminated from the xerox copy of the information presented to the jury. The signature of the U.S. Attorney was eliminated also, as it had appeared on the second page of the information, and to include it would have made apparent the fact that material was excised.

■■■ The purpose of the signature requirement, to assure that only the government institute criminal prosecutions, was fulfilled in this case. The attorney for the defendant was shown the redacted information before it was presented to the jury, and did not make any objection at that time. The Court can envision no prejudice to defendant from the fact that the jury did not see the U.S. Attorney's signature on the information presented to them.

■■ Ground nine claims that in light of Parr v. United States, 363 U.S. 370 (1960) a judgment of acquittal should be entered. At trial defendant's attorney argued from Parr for the proposition that the mailing of a thing which the law required to be mailed was not mail fraud, noting that Mr. Moorhead was required to sign the labor reports and send them to Chicago Bridge and Iron ("CBI"). However, in Parr there was no fraud in the amount of tax assessments sent, rather the fraud was in the use of the monies received. Here the allegation was that the contents of the forms Moorhead signed and sent to CBI were fraudulent. A "legally compelled" mailing that is fraudulent in itself is not insulated from mail fraud prosecution. Such a mailing fulfills the requirement that a mailing be "a part of the execution of the fraud" or, as the Court wrote in Pereira v. United States, 347 U.S. 1, 8 (1954), "incident to an essential part of the scheme", before the mail fraud statute can be applied.

Another possible claim under Parr is that the fraud was completed before the mailings were sent. In Parr, defendants had fraudulently obtained gasoline and service station products by use of credit cards. The mailing of the invoices from the oil company were found insufficient to invoke mail fraud. The court in Parr followed Kann v. United States, 323 U.S. 88 (1944) in finding that the scheme

had reached fruition before the mailings and that the mailings were not for the purpose of executing the scheme. See also United States v. Maze, 414 U.S. 395 (1974).

■ The mailings complained of in the information in the instant case fall into two categories: one, invoices from CBI to the Government of the Virgin Islands, and two, labor reports signed by Moorhead and sent to CBI. Both forms of mailing contributed to the process of having the Government of the Virgin Islands pay for the building of tanks for a private individual on his land. Unlike the credit card situation, where an anonymous deceiver obtains services or goods and vanishes, never caring who eventually pays for his fraud, here the obtaining of services from CBI was only a first step in the scheme; the essence of the scheme was to have the Government of the Virgin Islands pay for the services of CBI for Mr. Harthman. Inasmuch as the tanks were stationary, the scheme was incomplete until the work on them was actually paid for by the Virgin Islands Government. For this to be accomplished, it was necessary that the work sheets be sent to CBI, and that the invoices be sent back to the Government of the Virgin Islands. These mailings were thus in furtherance of an ongoing plan to defraud.

## ORDER

For the foregoing reasons,

It is hereby ORDERED

That defendant's motion in the alternative for a judgment of acquittal or a new trial be, and hereby is, DENIED.